A. C. TILTON, *Plaintiff in Error,* vs. RALPH A. HORTON, *Defendant in Error.*

137 So. 801.

139 So. 142.

En Banc.

Opinion filed November 12, 1931.

Petition for rehearing denied January 13, 1932.

498

*Redfearn & Ferrell, W. H. Burwell* and *J. A. Dewberry,* for Plaintiff in Error;

*McCune, Hiaasen & Fleming,* for Defendant in Error.

ANDREWS, Commissioner:—This cause is here upon writ of error to the Circuit Court of Broward County. The final judgment to which the writ of error was taken is based upon an order of the court overruling a demurrer of plaintiff to defendant's plea of res judicata.

The plaintiff in error was plaintiff below and defendant in error was defendant below.

The principal question presented for review is that:

Where a bill is filed by the maker of notes to have same cancelled and the defendant payee in his answer denying the equities of said bill sets up a counter-claim for a money judgment in his favor upon said notes, which had since the filing of the suit become due and payable, and the court after taking testimony on the equities of the bill of complaint at the hearing dismisses the cause "With prejudice" to complainant and "without prejudice to defendant," and the final decree which is entered later dismissed the "cause" without any express reference to counterclaim of defendant; does such final decree of the chancellor dismissing the "cause" in the equity suit, without specifically mentioning the counter-claim, constitute res judicata

and thus effect an estoppel when set up by plea to a declaration in a subsequent action at law on the notes?

The facts are in substance that Ralph H. Horton as complainant below brought suit in equity to cancel seven promissory notes executed by him in favor of Tilton upon the ground of fraud, mistake and misrepresentation; to which defendant filed his answer denying the allegations of the bill and later by amended answer set up a counter-claim in which he asked for a money judgment in his favor on the notes in question all of which had in the meantime become due and payable. No replication was filed to the counter-claim (for which purpose a complainant is allowed 20 days under Section 4907, Compiled General Laws of Florida, 1927; otherwise a default may be entered on such counter-claim). It appears however that the amendment was allowed by the court at the beginning of taking testimony, and the order of the chancellor dismissing the complainant Horton's cause may have made a replication immaterial, in the absence of a request by complainant at the time it was allowed to be filed.

At the close of complainant's testimony the court stated that complainant had shown by his own testimony that he was not entitled to any relief; whereupon his counsel stated "If that is the case I would like to move for a dismissal of the bill." To this counsel for defendant objected upon the ground that complainant in his bill states that he is able, willing and stands ready to pay defendant such sum or sums of money as this court shall find equitably due him. The defendant then asked for judgment against Horton for the amount of principal and interest on the notes also asked to submit testimony as to the amount of his attorney fees under the notes, which was not granted.

The plaintiff having "rested," the court asked defendant's solicitor: "Has the defendant any testimony?" To which defendant's solicitor replied: "The notes are in evidence in the bill and are admitted by the bill and are im-

pounded by this injunction in the bank and are all past due. That is, they are admitted in evidence."

*By the Court*: "I don't think you are entitled to attorneys fees yet. He hasn't refused to pay those notes when they are presented to him for payment after adjudication of this cause. He has a right to have this matter litigated."

*Counsel for Defendant*: Those notes are collectible now. The Court has jurisdiction of the parties and the subject-matter. He says in his bill * * * that he is ready to pay whatever sums are found to be due upon final hearing of this cause. It is recited in our answer that he owes it and we ask this court for judgment. We think we are entitled to recover and not to go into common-law court and sue on those notes. We don't think we ought to bring this issue up again; that has been passed upon by this Court."

*The Court*: "I asked you if the defendant had any testimony to offer."

*Mr. Burwell*: "We can't get possession of the notes and there is no issue here as to the notes. Will your Honor give us an order directing the bank to turn those notes over to us? I don't think they are necessary, they are admitted in the pleadings by both sides. They are restrained from turning them over to anybody."

*The Court*: "I had better have those notes in here."

*Mr. Landefeld*: "I think we should be given an opportunity to enter some plea. This morning the Court gave them leave to amend their answer and I ask leave to file a replication, I might have a defense."

*The Court*: "I am inclined to dismiss the case with prejudice."

*Mr. Burwell*: "That is the very purpose of the amendment (counter-claim of defendant) which your Honor allowed. There may be other defenses to those notes, but we don't want to prolong this litigation and give him time to reply. This cause ought to be ended here."

In other words plaintiff in error contended that the

purpose of the amendment setting up the counter-claim on the notes was to litigate and obtain judgment on the notes in this same chancery suit, which he claims Section 4906, Compiled General Laws of Florida, 1927, authorizes.

*The Court*: "I will dismiss the cause with prejudice, entering an order that the equities are with the defendant, with prejudice to the complainant, and without prejudice to the defendants."

*Mr. Burwell*: "As I understand the ruling of the Court, this bill is dismissed with prejudice to the complainants. That the issues in this case are settled with this, and we are at liberty to file suit on our notes?"

*The Court*: "Yes."

The record of the hearing further reads:

"There being nothing further to come before the court at this time in this cause, the complainant and the defendant having rested their case, said hearing was adjourned sine die," on October 1, 1927.

The above is taken from the record of the proceedings certified by the Chancellor.

On October 22, 1927, a final decree was issued ordering the bank to deliver the seven promissory notes to A. C. Tilton, and that "It appearing to the Court, upon consideration of the testimony and proofs adduced herein, that the complainant is not entitled to any relief, recovery or remedy herein; it is THEREFORE ORDERED, ADJUDGED AND DECREED that this cause be, and it is hereby dismissed with prejudice to, and at the cost of, the complainant."

On October 26th, 1927, A. C. Tilton, instituted suit at law on the said promissory notes in the usual form and to his declaration various demurrers and pleas were filed and ruled upon. While this litigation was pending, plaintiff, A. C. Tilton, on October 24th, 1930, filed a motion in said original chancery cause requesting a hearing to take testimony on his counter-claim in said suit.

The record above is recited here because the main issue presented is as to what construction must be placed upon the final decree in the chancery suit. It may be also stated here that if the trial court committed reversible error in his judgment on the demurrer that it would become necessary to consider the cross-assignments filed by defendant in error. It would likewise become unnecessary to decide whether or not a cross-writ of error by a defendant lies to a final judgment at law in his favor.

It appears that the filing of the above petition by Tilton requesting to take testimony relative to this counter-claim was caused by the attitude of the court upon the pleadings filed in the law action by Horton.

A hearing was had upon this petition before Judge Tedder, who had in the meantime succeeded Judge Giblin, and an order was entered denying said motion on the ground (as stated in the opinion accompanying the order) that the original decree of Judge Giblin of October 22, 1927, (referred to above) dismissing the "Cause" in effect dismissed the counter-claim and had become absolute and that no appeal having been entered or rehearing requested the court had lost jurisdiction of the case including the counter-claim.

Thereafter, on December 6, 1930, defendant Horton filed his amended plea to the declaration in the law case setting up that the dismissal of said chancery "cause" with prejudice to complainant likewise dismissed the counter-claim of defendant and the decree became res judicata and constituted an estoppel as to the rights of Tilton to sue at law on said notes.

To this amended plea of Horton there is attached as an exhibit a transcript of the record of the proceedings in the equity suit. Plaintiff Tilton filed a demurrer to this amended plea wherein it is stated that it affirmatively appears from the plea and exhibit attached thereto that said final decree in said Chancery cause was not res judicata as to

the rights of plaintiff in the law case. This demurrer was overruled and plaintiff refusing to plead further, a final judgment was entered in favor of defendant to which writ of error was taken.

Tilton's two assignments of error are based upon the order overruling the above demurrer and the entry of final judgment thereon.

The trial court's ruling on the demurrer appears to have been based upon a strict technical construction of the wording of the final decree of Judge Giblin in the chancery suit, as will be observed by the opinion accompanying the decree in which it is stated that the cause of action in the law is res judicata "regardless of whether or not by dismissing the 'cause' plaintiff's claim was disposed of on the merits."

The trial court's order overruling the demurrer of plaintiff to defendant's plea to plaintiff's declaration on the notes in the law case also appears to be based upon the theory that the counter-claim in the chancery suit having been allowed to be filed that it became a matter which the final decree dismissing the "cause" necessarily and finally disposed of as it was a subject-matter that "could have been litigated and finally adjudicated" in the former chancery suit; and the position of the defendant in error seems to be based upon the wording of the decisions of this court in the cases of Jones v. Morgan, 59 Fla. 542, 52 So. 140; Semple v. Semple, 90 Fla. 7, 105 So. 134; and the later case of Hay v. Salisbury, 92 Fla. 446, 109 So. 617, wherein this Court, quoting with approval from 15 R. C. L. 963, stated that when the second suit is between the same parties as the first and on the same cause of action the judgment on the former is conclusive in the latter not only as to every question which was decided but also as to every other matter which the parties might have litigated and determined within the issues as they were made or tendered by the pleadings or as incident to or essentially connected

with the subject-matter of the litigation whether the same, as a matter of fact, were or were not considered.

Of course the above statement of the law would have to be construed with reference to the particular issues involved and our constitutional guaranties. The facts in the instant case show that the same notes which were involved in the chancery suit constituted the cause of action in the present suit, therefore both suits necessarily arose out of the same transaction. It is also clear that a promissory note in this state is a subject-matter of an independent action at law.

But for the fact that the point has been raised by the last above cited cases that the notes set up by the counter-claim in the chancery suit arose out of the same cause of action and was a matter ''which the parties might have litigated and determined'' and that Tilton was therefore bound by the judgment 'because the issue could have been submitted and tried''—it would not be necessary to state anything further for a determination of this case than that a proper interpretation of the order in open court, which is certified to by the chancellor, ought to be conclusive that defendant's counter-claim was ''dismissed without prejudice'', and under this condition would thus permit him to file the suit here in question. This point will be considered more fully later.

This may however require us to now consider the provisions of Chapter 6907, Acts of 1915 (Sections 3118, 3119, 3120, 3121, Revised General Statutes of 1920—now Sections 4904-5-6-7, C. G. L. 1927,) which provides that the defendant in his answer in any suit in chancery shall in short and simple terms set out his defense to each claim asserted by the bill, and by the third paragraph of Section 1 of said Chapter 6907, provides that:

''The *answer must* state in short and simple form any counter-claim arising out of the transaction which is the subject-matter of the suit, and *may,* without cross-bill,

set out (up) any set-off or counterclaim against the plaintiff which might be the subject of an independent suit *in equity* against him, and such set-off or counterclaim, so set up, shall have the same effect as a cross-suit, so as to enable the court to pronounce a final judgment (decree) in the same suit both on the original and cross-claim." (italics ours).

The above quoted section was in substance adopted as a part of said Chapter 6907 Laws of Fla. 1915, from Federal Equity Rule 30, the only difference noted being that the words "up" and "decree", supplied by the writer hereof, appears in Rule 30 instead of the words preceding them, respectively. Therefore, any interpretations of said Rule 30 by our highest Federal Courts should be of much aid in construing and applying its provisions in this State. See 25 R. C. L. 1096, Sec. 294, also the case of A. C. L. Ry. Co. v. Beazley, 54 Fla. 311, 45 So. 761, as to interpretation of adopted statutes and rules of other states. Chief Justice Taft in the case of American Mills Company v. American Surety Company, 260 U. S. 360, 67 L. Ed. 306, 43 Sup. Ct. Rep. 149, speaking for a unanimous court, said:

"The counter-claim referred to in the *first* part of the paragraph must therefore be an *equitable* counter-claim,—one which, like the set-off or counter-claim referred to in the next clause, could be made the subject of *an independent bill in equity.* The counter-claim and the set-off and counter-claim in the two clauses are in pari materia except that the first grows out of the subject-matter of the bill and the other does not. That which grows out of the subject-matter of the bill must be set up in the interest of an end of litigation. That which does not *may* be set up, if the defendant wishes, in one proceeding in equity quickly to settle all *equitable issues* capable of trial between them *in such a proceeding* even though they are not related. * * * The rule should be liberally construed to carry out its evident purpose of shortening litigation, but the limitation of counter-claims to those which are *equitable is imperative.*" (italics ours).

It will be observed that said Federal Equity Rule 30,

also said Section 4906, C. G. L. Fla. 1927, provides that the answer *must* state in short and simple form "any counter-claim arising out of the transaction which is the subject-matter of the suit, * * * so as to enable the court to pronounce a final judgment in the same suit both on the original and cross-claim." The word "must" indicates that it is imperative that if the defendant has a counter-claim which arose out of the same transaction forming the subject-matter of the suit that such counter-claim must be set up, *provided* such counter-claim would under equity procedure be the "subject-matter of an independent suit in equity against" complainant.

On the other hand if the counter-claim is not one such as could properly be considered the "subject-matter of an independent suit in equity" in this state then the defendant could not be required to plead such claim, or be penalized for declining to do so, and therefore the word "must" may be construed to mean "may" in instances where the subject-matter of the counter-claim constitutes a cause of action cognizable *at law* where the right to a trial by jury is guaranteed by our constitutions—even though the right *may be waived* by pleading it as a counter-claim. In fact, the word "must" in the first clause of the Rule and Statute is susceptible of the construction that it may modify and emphasize the phrase "in short and simple form" rather than that *any* counter-claim arising out of the same transaction "must" be pleaded regardless of whether the claim is an equitable one or the subject-matter of a suit at law. Reading together Federal Equity Rules 30, 31 and 32, and Chapter 6907, Laws of Fla. 1915, which in substance adopts them, it would seem that it was the intent to empower a defendant to set up a counter-claim either in his answer, or by cross-bill; but if by a counter-claim in his answer, it must be *stated* "in short and simple form." The quoted phrase was not set off by commas in the original Act as now appears in Revisions.

This Court in the case of Turner v. Utley, 93 Fla. 910, 112 So. 837, held that "the cause of action pleaded in such counter-claim must be of equitable cognizance and, as was the case with the cross-bill, must set up matters arising out of or connected with the subject-matter of the original bill." See also Lovett v. Lovett, 93 Fla. 611, 112 So. 768; and Levitt v. Axelson (Fla.) 135 So. 553.

The *reason* for the above rule and statute providing that the counter-claim or set-off must constitute a subject-matter for an independent suit *in equity* may be found embedded in the Federal and State Constitutions which provide, respectively, that: "In suits at common law * * * the right of trial by jury shall be preserved", etc. (Art. VII U. S. Constitution): "The right of trial by jury shall be secured to all, and remain inviolate forever." (Sec. 3, Declaration of Rights, Florida Constitution). In the case of Hawkins v. Rellim, 92 Fla. 784, 110 So. 350, this Court reaffirmed what has long been deemed the law in all cases properly triable at law, wherein it was held that:

"In construing section 3 of the Declaration of Rights, Const. Fla., and the Seventh Amendment to the Federal Constitution, the courts hold that these provisions are designed to preserve and guarantee the right of trial by jury in proceedings according to the course of the common law, as known and practiced at the time of the adoption of the Constitution, and in neither case do they extend to or have any reference to equitable demands enforced in the courts of chancery."

See other cases there cited, including Luria v. United States, 231 U. S. 9, 34 S. Ct. 10, 58 L. Ed. 101. It is also well settled that the constitutional right to jury trial extends only to determination of "contested" issues in law actions. State v. Aetna Casualty and Surety Company, 84 Fla. 123, 92 So. 871.

In the American Mills Company case, supra, Chief Justice Taft said:

"By the construction which petitioner would put up-

on Rule 30, it is an attempt to compel one who has a cause of action at law to bring it into a court of equity and then try it without a jury whenever the defendant in that cause can find some head of equity jurisdiction under which he can apply for equitable relief in respect to the subject-matter. The order of procedure, as between the law and equity sides in such cases, always has been that the equity issue is first disposed of by the chancellor, and then, unless that ends the litigation, the original plaintiff may have his action at law and his trial by jury secured to him by the Seventh Amendment of the (U. S.) Constitution. Liberty Oil Co. v. Condon National Bank, 260 U. S. 235, 43 Sup. Ct. Rep. 118. Petitioner's construction of Rule No. 30 would deny the successful defendant in the equity action this right.''

The successful defendant in the chancery suit in the instant case has chosen to have his judgment on the notes established by action at law, as the dismissal of the bill left nothing upon which a court of equity could further maintain jurisdiction. The *complainant* had also objected to proceeding with a trial of defendant's counter-claim without his being allowed to plead his defense. Judge Taft however further stated that equitable jurisdiction and the right to jury might be waived, as follows:

"As defendant was not obligated to set up and prove its action at law under Rule 30, and when it did so, by its affirmative action, it waived its previous objection to the equitable jurisdiction and also its right of trial by jury."

A jury may be waived in a common law action in this state. Section 4358, C. G. L. 1927; Rivas v. Summers, 33 Fla. 539, 15 So. 319; Lovett v. Lovett, supra. See also Merchants Heat & Light Co. v. J. B. Clow & Sons, 20 U. S. 286, 289, 290, 51 L. Ed. 488-490, 27 Supt. Ct. Rep. 285.

This Court is committed to the above principle of jurisprudence expressed by Judge Taft, as evidenced by the cases of Gentry-Futch Company v. Gentry, 90 Fla. 595, 106 So. 473; Farrell v. Forest Investment Company, 73 Fla. 191, 74 So. 216, 1 A. L. R. 25; Levitt v. Axelson (Fla.)

135 So. 553. In the latter case this Court speaking through Mr. Justice Davis reaffirmed the following principle.

"While a court of equity having once obtained jurisdiction of a cause will retain it for all purposes and administer complete relief, yet, in order to authorize relief which can be obtained in a suit at law, there must be some substantial ground of equitable jurisdiction, both alleged and proven; otherwise a court of equity will not retain jurisdiction and grant a purely legal remedy."

The above case also holds that:

"Where a bill states a case entitling the complainant to equitable relief, if the proof fails to establish the averments of the bill with respect to the equitable relief sought, in consequence of which the prayer for an equitable relief is denied, the court is without jurisdiction to proceed further and determine separate and independent claims of legal right between the parties, which claims of legal right would be cognizable in a court of law."

After the chancellor dismissed the bill in the chancery suit for want of equity there was no subject-matter remaining as a basis for an "independent suit in equity" against either party; therefore, from this viewpoint the chancellor's final decree dismissing the cause (with prejudice to complainant) without specifically mentioning the defendant, ipso facto and necessarily left defendant Tilton's counter-claim unlitigated and the "merits" of it undertermined—even if the chancellor in open court had not "dismissed him without prejudice."

Special attention has been directed to the opinion in the case of Hitchcolk v. Mortgage Security Corporation, 95 Fla. 147, 116 So. 244, wherein it was held that:

"Where complainants file a bill of complaint to have their notes, held by the respondent, declared to be void and ordered cancelled (as in the present case), and the respondent filed an answer in which is incorporated a paragraph setting up the capacity in which it holds the notes, and that they are binding obligations past due

and unpaid and prays that upon final hearing the notes be held to be valid obligations of complainants and that judgment be rendered for the principal, interest and attorney fees due thereon, that an order of the chancery court denying a motion to strike the paragraph thus praying for affirmative relief is proper.

The reasons stated in the opinion by Circuit Judge A. G. Campbell, speaking for the Court, are substantially that if the claim for affirmative relief is ''based upon matters arising out of the transaction which is the subject-matter of the bill of complaint, then it would seem that the answer should stand, whether the relief claimed be such as might be obtained in an independent suit in equity or not.'' The question as to whether there was equity in the bill in the above case was not passed upon.

It will be observed that in that case, as in the present one, the defendant voluntarily set up his counter-claim which, though constituting the basis of a cause of action at law, the defendant may be held to have waived his own constitutional privilege of a trial by a jury, and if he may waive it, the portion of the answer setting up the counter-claim on the notes, was not subject to a motion to strike nor even a demurrer.

It must be conceded that the rule has long prevailed in this state that a jury can be waived in any common law action which of course applies to actions on promissory notes. Sec. 4358, C. G. L. 1927, enacted in 1829.

A number of decisions of our highest Federal Courts have held that while a defendant in an equity suit is not compelled to set up his counter-claim on a purely legal cause of action but where he does set it up he waives all objections to the equitable jurisdiction and his constitutional right to a trial by jury. See Hopkins Federal Equity Rules, pages 197 and 198, also 155 U. S. 13, 39 L. Ed. 52. It appears that before the decision by Judge Taft in the American Mills Company case was written some of the Circuit Courts of Appeal and District Courts had been hold-

ing that any counter-claim "arising out of the transaction which is the subject-matter of the suit" must be set up by answer or deemed abandoned, and that the provision of Rule 30 was mandatory. The American Mills Company case hold that the courts never intended, nor had they the power, to compel a defendant to plead a purely *legal* cause of action as a counter-claim to a suit in equity and Rule 30 was never so intended; that to do so would be in conflict with the Seventh Amendment to the Federal Constitution. See Hopkins Federal Equity Rules, P. 197.

This view need not necessarily deprive the *makers* of the notes of their right to a trial by jury in defending their case against the notes; for if the pleading should raise an issue which under our system is triable by a jury and there is a request therefor, thus affirmatively showing that the privilege and right had not been waived, the chancellor would be compelled upon such request, as against error, to transfer the issues so made to the common law side of the court, as the privilege extends to both parties to the suit in the absence of a waiver. See Norris v. Eikenberry, decided this Term. Our conclusion on this issue in the instant case is not in conflict with a similar point recently decided in the above case of Norris et al. v. Eikenberry, wherein it was held that the "bill did not state a case for relief in equity" nor the answer set up a counter-claim that could be made the subject of an independent bill in equity; for the bill in the instant case was adjudged to have set up a case for relief in equity, but the proofs totally failed to sustain it. The above case also cites with approval the case of Gentry-Futch Co. v. Gentry, supra, which held that as all grounds of equitable jurisdiction of complainant's bill having been properly denied and eliminated, the court was not justified in entering a decree in favor of respondent on the counter-claim for affirmative relief based upon a claim or right cognizable

in a court of law. The above may be considered as practically decisive of the instant case.

In view of Section 4358 C. G. L. Fla. 1927, which provides that a judgment rendered by a court without a jury, by agreement, shall be as effectual as upon a verdict, also Section 4906 C. G. L. 1927, providing that an answer may set up "any counter-claim arising out of the same transaction which is the subject-matter of the suit", it is clear that where the counter-claim is based upon a cause of action cognizable *at law* that a defendant may waive his right to jury trial by pleading it. If however, the counter-claim be *an equitable one* against the plaintiff and arises out of the same subject-matter of the suit the defendant must necessarily plead it in his answer, in the interest of putting an end to the litigation.

Reverting now to the record of what occurred in open court and as to the legal effect of the proceedings, including the wording of the final decree, it would seem that after a trial court announces his ruling on a pleading, as in this case where the defendant was advised in open court that his counter-claim was "dismissed without prejudice" and that he was thereafter at liberty to bring suit at law on the notes, it should not be incumbent upon the defendant to follow the chancery proceedings further,—certainly not to the extent of requiring him to see that the wording of the final decree was in exact accord with the order, as he has a right to rely upon the order so made unless advised otherwise. An order may usually be considered as having been rendered when the court has pronounced in open court that which finally determines the issues in the case as to either party, even though a *final* judgment is not then entered in the sense that an execution or appeal may be based thereon. 15 R. C. L. Sections 5 and 11.

This Court has also held that no judgment can be available as an estoppel unless it is a judgment on the "merits" of the issue presented; (Armstrong v. Manatee County,

49 Fla. 273, 37 So. 938; O'Neil v. Percival, 25 Fla. 118, 5 So. 809; Moore v. Felkel, 7 Fla. 445, 15 R. C. L. 982, Section 456) : Also has held that where a plea of res judicata does not show a final disposition of a prior action between the same parties, for the same cause of action it is subject to demurrer. Walton Land & Timber Co. v. Louisville & N. R. Co., 69 Fla. 472, 68 So. 445. The final decree does not show a final disposition of the "merits" of Tilton's counter-claim though it finally disposed of the *complainant's* cause. The court had already stated that the cause was dismissed "without prejudice to defendant", which left the *merits* of the counter-claim open. It could not be seriously insisted that a chancery court could not properly dismiss a cause without prejudice to a defendant who sets up a counter-claim, especially where complainant's bill is dismissed for want of equity. Levitt v. Axelson, supra; Gentry-Futch Company v. Gentry, supra.

The wording of the final decree dismissing "cause" after stating to defendant in the chancery suit that the cause was dismissed without prejudice to him and later failing to mention defendant in the final decree may however leave such decree subject to interpretation; and, upon this phase of the case, it is observed that this court is committed to the proposition that a judgment may be aided and construed by the entire record. Taylor v. Branham, 35 Fla. 297, 17 So. 552, 39 L. R. A. 362; Elizabethport Cordage Co. v. Whitlock, 37 Fla. 190, 20 So. 255; Theison v. Whiddon, 60 Fla. 372, 53 So. 642. In the case of Pearson v. Helvenston, 50 Fla. 590, 39 So. 695, it was held that where the language of a decree is open to more than one interpretation, it must be so interpreted as to make it proper with reference to the proceedings in the case. See also Huddleston v. Graham, 73 Fla. 350, 74 So. 414.

We reach the conclusion that the *whole record of the proceeding* in the chancery suit shows that it was the intention and purpose of Judge Giblin to dismiss the chancery

cause as to defendant Tilton "without prejudice", and the final decree is not inconsistent with that conclusion. Under this construction of the final decree in the chancery suit it may have become immaterial as to whether the issue raised by the counter-claim was one that might or could have been litigated in the chancery suit or not.

In the case of Epstein v. Ferst, 35 Fla. 498, 17 So. 414, this Court said:

"A decree of a court of chancery stating that the same is without prejudice to a party is, to such party, the same as no decree, and will not support a plea of *res adjudicata*, and the same matters in issue in the original suit can be again heard and determined":

and also held that:

"The intention and effect of such a reservation in a decree are, by express terms, to prevent it from operation as a bar to another suit." See authorities 8 Words and Phrases, First Series, p. 7507-8; Newberry v. Ruffin, 102 Va. 73, 45 S. E. 733.

The trial court committed error in overruling the demurrer of plaintiff to defendant's plea of res judicata the final judgment of the court rendered thereon is hereby reversed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that the judgment of the court below be, and the same is hereby, reversed.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, BROWN, AND DAVIS, J.J., concur.

---

ON MOTION FOR REHEARING

ANDREWS, Commissioner:—The only question passed upon in our former decision (rendered November 13, 1931) in this cause was whether or not the trial court committed

error in overruling a demurrer of plaintiff to defendant's plea of res judicata.

In the first part of the opinion we stated that "if the trial court committed reversible error in his judgment on the demurrer that it would be *unnecessary* to consider the cross-assignments filed by defendant in error" or as to "whether or not a cross-writ of error by a defendant lies to a final judgment at law in his favor." It will be noted that the motion for rehearing in quoting from our former opinion, as a basis for said motion, used the word "necessary" instead of *unnecessary* as it appears in the opinion.

This court has recently held that "cross-assignments of error by a defendant in error in a common law case are not authorized by any statute or rule of court in this jurisdiction" and "consequently such cross-assignments of error cannot be considered." Zigler v. Erler Corporation 102 Fla. 981, 136 So. 718; Wilder v. Punta Gorda State Bank, 100 Fla. 517, 129 So. 865. It was also said in the first cited case that 'there is nothing in our practice which precludes the defendant in error in a common law case from himself suing out a writ of error to *the same judgment* or appealable order, as that from which his adversary has taken a writ of error, thereby enabling the defendant in error by means of his cross-writ of error, and assignments of error based thereon, to obtain the same relief as appellees in chancery are able to obtain by means of cross-assignments of error without a cross-appeal;" also held that "a party may bring a writ of error to reverse his own judgment for error". The rule is also stated in 3 C. J. 352, Section 106, that "At common law, however, where one party sues out a writ of error this does not prevent defendant in error from also suing out such a writ to review errors complained of by him."

It is observed that the defendant's praecipe for cross-writ of error states that it is sued out from the final judgment in this cause and that 'no assignment of error is as-

signed by defendant as to said final judgment'' and that "all assignments of error by the defendant are addressed to adverse interlocutory orders rendered on April 22, 1929,'' and ''on May 2, 1929.''

It appears therefore that defendant in error was entitled to have his assignments of error adjudicated on this appeal. While the case of Zigler v. Erler Corporation, supra, was not before the writer of the former opinion when it was being prepared we have no hesitancy in conceding that a cross-writ of error was applicable for a review of his adverse ruling on demurrer; in fact, the result of the proceeding is equivalent to suing out a separate writ of error by the defendant Horton, which may for convenience be included in the same transcript as that of plaintiff in error.

We will now consider the questions raised by the cross-assignments of error as to whether the trial court committed error in overruling defendant Horton's demurrer to plaintiff's replication to defendant's special pleas to the declaration on the notes in question.

An examination of said special pleas of defendant will show that they set up in substance the same matters of defense to the instant suit as was set up in his bill for a cancellation of the same notes constituting the cause of action here; and to these special pleas plaintiff, in his replication to those pleas, set up in substance that the same matters and issues had already been passed upon in the former chancery suit wherein the trial court after hearing the testimony dismissed the bill with prejudice to complainant.

It is our conclusion that the replication of plaintiff addressed to the pleas shows that in substance and effect that the merits of the same issues and facts relied upon have been passed upon and formerly adjudicated, by a court of competent jurisdiction, therefore the trial court committed no reversible error in overruling the demurrer to plaintiff's replication. See 15 R. C. L. 993, Sec. 468.

We therefore hold that the substance of the matter set up in defendant's pleas have been adjudicated on its merits as shown by the former order and decree dismissing Horton's bill with prejudice; also, we hold (as shown by our former decision) that the proceedings in the chancery suit show that Tilton was not precluded, by reason of the former dismissal of the proceedings in chancery, from bringing suit on his notes.

Having thus reviewed our former decision and again reviewed the briefs and arguments of counsel addressed to the question involved in the order of the court in overruling the defendant's demurrer to plaintiff's replication, no useful purpose could be subserved by a reargument of matters which have already been very ably argued and covered; therefore, the motion for a formal rehearing should be and is hereby denied.

PER CURIAM.—The petition for rehearing filed in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is ordered and adjudged by the Court that the said petition for a formal rehearing be and the same is hereby denied.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, BROWN, AND DAVIS, J.J., concur.