156 So.2d 501 (1963)
C.E. HIGHTOWER, Appellant,
v.
William F. BIGONEY, Jr., Appellee.
No. 32209.
Supreme Court of Florida.
September 25, 1963.
McCune, Hiaasen, Crum & Ferris and Davis W. Duke, Jr., Fort Lauderdale, for appellant.
James E. Edwards, Fort Lauderdale, for appellee.
TERRELL, Justice.
William F. Bigoney, Jr., an architect, entered into a contract with the Hightowers wherein he agreed to furnish "complete Architectural Services consisting of *502 plans, specifications and supervision of construction, for the architectural work for a residence" to be located on certain real property owned by the Hightowers. The contract provided that Bigoney be paid specified percentages of the construction costs as compensation for his professional services. The total cost of the house was in excess of $200,000. As construction proceeded, disagreements arose over the design and other factors of the house in which the contractor, the architect and the Hightowers were involved. On or about July 1, 1959, pursuant to Chapter 84, Florida Statutes, F.S.A., Bigoney filed a claim of lien against the property, claiming that unpaid architectural fees in the amount of $14,393.44 were due him. Thereafter Bigoney instituted this suit in chancery to foreclose said architect's lien.
In their answer to the complaint the Hightowers challenged the validity of Bigoney's architect's lien and asserted that the bulk of the sum claimed by him was based on padded, fictitious or unsupportable items. In addition to their answer, the Hightowers filed a compulsory counterclaim for damages allegedly caused by Bigoney's careless and negligent performance of his contract for architectural services. The compulsory counterclaim included a request for trial by jury of the issues presented by said counterclaim. On motion, the trial judge struck the request for a jury trial and the Hightowers appealed that order to the district court of appeal.
The primary question presented to the district court of appeal was whether or not one may be denied a jury trial of legal issues and claims raised by a compulsory counterclaim filed in response to an equity suit notwithstanding Section 3, Declaration of Rights, Constitution of Florida, F.S.A., the request for jury trial having been seasonably made.
Before the district court of appeal, Hightower urged "that the denial of a jury trial on his counterclaim, which was a compulsory pleading, is error in view of Section 3 of the Declaration of Rights of the Florida Constitution, F.S.A. and Rules 1.13(1) and 2.1 of the 1954 Florida Rules of Civil Procedures, 30 & 31 F.S.A."
F.R.C.P. Rule 1.13(1), 30 F.S.A., provides:
"Compulsory Counterclaim. The defendant, at the time of the filing of his answer, shall state as a counterclaim, any claim, whether the subject of a pending action or not, which he has against the plaintiff, arising out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."
It should be noted that failure to file a compulsory counterclaim, such as was involved in the instant case, would have foreclosed any right of action the Hightowers may have had because of such a claim. See Pesce v. Linaido, Fla.App. 1960, 123 So.2d 747.
Upon consideration of the case, the district court of appeal affirmed the chancellor's decision denying the Hightowers' right to a jury trial on the issues presented by their counterclaim. (145 So.2d 505.) The district court's opinion emphasized that Bigoney's original suit sought enforcement of a statutory lien unknown at common law; that the determination of the issues raised in the complaint and the counterclaim "undoubtedly necessitates extensive accountings and the consideration of numerous change orders * * *" and that "the pleadings comprehend some issues that are equitable and others that are legal in character; but these issues are very closely interwoven."
Answering the request for jury trial as provided by Section 3, Declaration of Rights, the court said:
"Does the defendant have the absolute right to a jury trial of the legal issues raised by his compulsory counterclaim *503 to the plaintiff's original complaint in equity? The question is answered in the negative. It is our opinion that, notwithstanding the compulsory pleading rule, a counterclaimant's demand for a jury trial in an equity suit rests within the reviewable discretion of the chancellor. The request may be granted or denied according to the circumstances. If the issues are interdependent and not clearly separable, and equity jurisdiction has been properly invoked, the chancellor may adjudicate all interposed claims, permissive, compulsory, equitable and legal, and grant full and complete relief as among all the parties. Such is the situation here, and we think the chancellor acted discreetly and correctly in deciding to adjudicate in equity all the pleaded claims, including the counterclaim that otherwise would be peculiarly cognizable at law. Cf. 12 Fla. Jur., Equity, §§ 43 and 44; Cone v. Cone, Fla. 1953, 62 So.2d 907, 908; Coleman v. Davis, Fla.App. 1958, 106 So.2d 81. This broad exercise of equity jurisdiction does not, in the juridical sense, constitute a deprivation of the right to a jury trial."
The Hightowers, being dissatisfied with the district court's disposition of their appeal, seek review of said decision by the dual means of certiorari alleging direct conflict and by appeal on the theory that the district court of appeal initially construed a controlling provision of the Constitution of Florida, to wit, Section 3, Declaration of Rights, guaranteeing the right to trial by jury.
The appeal and the appeal by certiorari were consolidated for consideration and disposition.
The gist of the court's answer to the request for jury trial is a positive no, that notwithstanding the compulsory pleading rule, a counterclaimant's demand for jury trial in an equity suit rests within the reviewable discretion of the chancellor and may be granted or denied according to the circumstances. The answer then states some qualifications to the chancellor's discretion and concludes with this sweeping statement: "This broad exercise of equity jurisdiction does not, in the juridical sense, constitute a deprivation of the right to jury trial."
We realize that the language of some of the decisions when read in isolation may lead to the district court's answer but it is not supported by the cases we rely on and will presently discuss. We do not think it is the law. It is settled that one may by affirmative plea or by silence waive his right to a jury trial but when a litigant timely appears, as he did in this case, and enters a plea for it or claims it in proper manner, that claim and not the chancellor's discretion is the final word and it is the duty of the court to make provision for it because Section 3, Declaration of Rights, guarantees it.
The district court construed Section 3, Declaration of Rights, Constitution of Florida, guaranteeing jury trial. One cannot read the opinion and the record and not be driven to the conclusion that it was construing the applicable provision of the constitution initially. The district court of appeal was authorized to do this. Art. V, Sec. 4(2), Constitution of Florida; In re Kionka's Estate, Fla. 1960, 121 So.2d 644. So we must have jurisdiction of the appeal.
So much in support of jurisdiction; now let us consider briefly the status of the historical aspect of the concept of trial by jury.
In Wiggins v. Williams, 36 Fla. 637, 18 So. 859, 30 L.R.A. 754 (1895), this court had occasion to consider problems related in principle to those involved in the instant case. The Wiggins case involved a complaint in equity by the owner of certain turpentine producing lands seeking an injunction and accounting for turpentine unlawfully taken. An injunction was granted *504 and the chancellor held the complainant was entitled to recover damages from defendants for removal of the turpentine crop. In its opinion the Supreme Court made the following pertinent pronouncement:
"* * * The third section of the bill of rights does not grant the right of trial by jury, but secures or guaranties such right existing at the time of the adoption of the constitution. We said in Buckman v. State [ex rel. Spencer], 34 Fla. 48, 15 South. 697 [24 L.R.A. 806], that `when the right of trial by jury is secured by constitutional provision in general terms like ours, and without any qualification or restriction, it must be understood as retained in all those cases that were triable by jury according to the course of the common law. The provision in the first constitution, framed in 1838, that the right of trial by jury shall forever remain inviolate, contemplated, without doubt, a continuation of jury trials in all cases where such was the practice at the common law, and there is nothing in the subsequent constitutions to indicate a change in meaning in this respect.' * * *
"Courts of chancery were not, strictly speaking, courts of common law, their jurisdiction and practice being derived principally from the civil law, where no jury was employed; hence the guaranty of a trial by jury has no reference to such courts in their sphere of equity jurisdiction, nor does it extend to all cases at law; as it is perfectly clear that there were many proceedings in common-law courts in which juries were not used. * * * A principle has been established in the jurisprudence of this country that new rights unknown to the common-law procedure of trial by jury may be created, and provision made for their determination in the absence of a jury, without violating the constitutional provision we are considering. But, while it may be competent for the legislature to create new tribunals without common-law powers to adjudicate new rights without a jury, the mere change in form of an action will not authorize the submission of common-law rights to a court in which no provision is made to secure a trial by jury. * * *
* * * * * *
"It was a fundamental doctrine of a court of equity, as stated by Pomeroy (1 Eq.Jur. § 181), that when the court `has jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of all the matters at issue. For this reason, if the controversy contains any equitable feature, or requires any purely equitable relief which would belong to the exclusive jurisdiction, or invokes any matter pertaining to the concurrent jurisdiction by means of which a court of equity could acquire, as it were, a partial cognizance of it, the court may go on to a complete adjudication, and may thus establish purely legal rights and grant legal remedies which would otherwise be beyond the scope of its authority.' * * *"
Prior to the adoption of the Florida Rules of Civil Procedure in 1954 counterclaims in equity actions were governed by Equity Rule 35 (see 63.35[1] F.S.A.), the pertinent part of which is:
"The answer must state, in short and simple form, any counter-claim arising out of the transaction which is the subject-matter of the suit, and may, without cross-bill, set out any counter-claim against the plaintiff which might be the subject of an independent suit in equity against him; and such counter-claim so set up shall have the same effect as a cross-suit, so as to enable the court to pronounce a final decree in the same suit on both the original and cross-claim."
*505 This pronouncement was not out of step with the doctrine of the Wiggins case, supra.
Section 63.35(1), Florida Statutes, F.S.A. (i.e. Equity Rule 35), in substance was adopted from the federal equity rule and being so, the general rule is that it should be construed in accordance with the federal decisions interpreting that rule, when not in conflict with Florida laws. Savage v. Rowell Distributing Corp., Fla. 1957, 95 So.2d 415.
The leading Florida case interpreting Equity Rule 35 is Tilton v. Horton, 103 Fla. 497, 137 So. 801, 139 So. 142 (1931). The Tilton case involved a bill in equity to cancel certain promissory notes. The defendant filed his legal counterclaim in the equity action seeking a money judgment upon said notes. In disposing of the case on appeal, this court said:
"It will be observed that said federal equity rule 30 (28 USCA § 723), also said section 4906, Comp. Gen.Laws Fla. 1927, provides that the answer must state in short and simple form `any counterclaim arising out of the transaction which is the subject matter of the suit, * * * so as to enable the court to pronounce a final judgment in the same suit both on the original and cross claims.' The word `must' indicates that it is imperative that, if the defendant has a counterclaim which arose out of the same transaction forming the subject-matter of the suit, such counterclaim must be set up, provided such counterclaim would under equity procedure be the `subject-matter of an independent suit in equity against' complainant.
"On the other hand if the counterclaim is not one such as could properly be considered the `subject-matter of an independent suit in equity' in this state, then the defendant could not be required to plead such claim, or be penalized for declining to do so, and therefore the word `must' may be construed to mean `may' in instances where the subject-matter of the counterclaim constitutes a cause of action cognizable at law, where the right to a trial by jury is guaranteed by our Constitutions, even though the right may be waived by pleading it as a counterclaim. * * *
* * * * * *
"The reason for the above rule and statute providing that the counterclaim or set-off must constitute a subject-matter for an independent suit in equity may be found embedded in the federal and state Constitutions, which provide, respectively, that: `In suits at common law * * * the right of trial by jury shall be preserved,' etc. (Amendment 7, U.S.Constitution.) `The right of trial by jury shall be secured to all, and remain inviolate forever.' (Section 3, Declaration of Rights, Florida Constitution.) In the case of Hawkins v. Rellim [Inv. Co.], 92 Fla. 784, 110 So. 350, 351, this court reaffirmed what has long been deemed the law in all cases properly triable at law, wherein it was held that:
"`In construing section 3 of the Declaration of Rights [Const.Fla.] and the Seventh Amendment to the federal Constitution, the courts hold that these provisions are designed to preserve and guarantee the right of trial by jury in proceedings, according to the course of the common law as known and practiced at the time of the adoption of the Constitution, and in neither case do they extend to or have any reference to equitable demands enforced in the courts of chancery.'
"See other cases there cited, including Luria v. United States, 231 U.S. 9, 34 S.Ct. 10, 58 L.Ed. 101. It is also well settled that the constitutional right to jury trial extends only to determination of `contested' issues in law actions. *506 State [ex rel. Cartmel] v. Aetna Casualty & Surety Company, 84 Fla. 123, 92 So. 871, 24 A.L.R. 1262.
"In the American Mills Company Case [American Mills Company v. American Surety Company, 260 U.S. 360, 43 S.Ct. 149, 67 L.Ed. 306], supra, Chief Justice Taft said:
"`By the construction which petitioner would put upon rule 30, it is an attempt to compel one who has a cause of action at law to bring it into a court of equity and then try it without a jury whenever the defendant in that cause can find some head of equity jurisdiction under which he can apply for equitable relief in respect to the subject-matter. The order of procedure as between the law and equity sides in such cases always has been that the equity issue is first disposed of by the chancellor and then, unless that ends the litigation the original plaintiff may have his action at law and his trial by jury secured him by the Seventh Amendment of the [U.S.] Constitution. Liberty Oil Co. v. Condon National Bank, 260 U.S. 235, 43 S.Ct. 118, 67 L.Ed. 232. * * *'"
In Tilton v. Horton, supra, this court held that where the defendant in an equity proceeding voluntarily files his legal counterclaim in equity, which is a permissive act pursuant to Equity Rule 35, by such affirmative action he waives his objection to equitable jurisdiction and his right of trial by jury.
So it was clear that prior to the adoption of the Florida Rules of Civil Procedure in 1954, a defendant in an equity suit was not compelled to file his legal counterclaim arising out of the transaction which is the subject matter of the equitable suit but could assert them in an independent action at law where his constitutional right to a jury trial was protected. He could, however, waive these rights by voluntarily filing his counterclaim.
In 1954 the Supreme Court of Florida adopted the Florida Rules of Civil Procedure. By said rules Section 1.13 was made applicable to both actions at law and suits in equity. Section 1.13(1) (set out verbatim elsewhere herein) compels the defendant in all suits to file as a counterclaim "any claim, whether the subject of a pending action or not, which he has against the plaintiff, arising out of the transaction or occurrence that is the subject matter of the action * * *." If the defendant fails to file such counterclaim he may not thereafter assert his claim against the plaintiff.
Prior to the decision of the case at bar, some of the district courts of appeal had occasion to consider the concept of trial by jury as guaranteed by Section 3, Declaration of Rights.
Miller v. Rolfe, Fla.App. 1957, 97 So.2d 132, is an example. The case is not directly in point, since no counterclaim was filed but the chancellor awarded a money judgment for reasons not detailed. Speaking through Judge Wigginton, the First District Court of Appeal said:
"Appellee's remedy therefore is limited to a claim for damages, if any he suffered, in an action at law for appellants' breach of contract. We are not here dealing with a mere technicality. Throughout the annals of our jurisprudence the right to trial by jury in actions cognizable at law, as guaranteed by the clear mandate of our Constitution, has remained sacred and inviolate, and although it may be waived by consent of the parties, it can neither be disregarded nor withheld by the court over the objection of a party vested with such right. On the issue of damages, appellants were entitled as of right to a jury trial in a court of law and, in the absence of a waiver thereof, they could not be deprived of that right.
"On this state of the record the Chancellor properly could and should have on his own initiative or on motion of *507 either party, entered an order transferring this cause to the law side of the court for jury trial." [Citing Rule 1.39, 1954 R.C.P., 30 F.S.A.]
The following cases follow this line: Ganaway v. Henderson, Fla.App. 1958, 103 So.2d 693; Jones-Mahoney Corp. v. C.A. Fielland, Inc., Fla.App. 1959, 114 So.2d 18. Counterclaims were filed in these cases, compulsory in one and "permissive" in the other. Right to jury trial was waived in the first case and was not requested in the other. The chancellor recognized the right to jury trial in both cases but disposed of them in equity for the reasons so stated.
See also Black v. Boyd, 6 Cir., 1957, 248 F.2d 156, and Lisle Mills v. Arkay Infant Wear, D.C.N.Y., 1950, 90 F. Supp. 676. We quote the pertinent language of the court in the Mills case because it is so applicable to the case at bar:
"* * * The basic nature of Arkay's claim for relief is for the violation of a common-law right, namely, protection against unfair competition. It seeks merely damages, and I would surely be over-technical to deny it a constitutionally protected right, because the pleader used the `other and different relief' formula, probably automatically. This counterclaim, I take it, is one that Arkay has no alternative except to assert, i.e., it is a compulsory counterclaim (F.R.C.P. rule 13(a)). Therefore, to deny Arkay a jury would be tantamount to a holding that a plaintiff in a patent suit can become so far master of the litigation that merely by framing his complaint for equitable relief he can deprive a counterclaiming defendant of a jury trial or, in the alternative, have the benefit of the doctrine of res judicata, if the defendant fails to assert his compulsory counterclaim. This would certainly be a novel result of the attempt made by the framers of the rule to fuse law and equity, to say nothing of their manifest purpose to end all of the controversies between the parties in one litigation. To put it shortly, to strike defendants' demand for a jury would negative the concept, basic in the rules, of a `just, speedy, and inexpensive determination of every action'. I refuse to construe them in that way, and I deny plaintiff's motion to strike the jury demand."
It was pointed out in the discussion of related Federal Rule 13(a) in the recent case of Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 5 Cir., 1961, 294 F.2d 486:
"* * * Of course, at common law a jury trial was available as of right in any action brought at law; in suits in equity, on the other hand, questions of fact were determined by the court sitting without a jury. The Seventh Amendment, preserving the right to trial by jury in actions at law, planted deep in American law the distinction between legal and equitable causes of action. As new rights of action developed, courts characterized them as legal or equitable by analogy to their historical counterparts to decide whether they created rights to a jury trial. In 1938 merger of the federal courts of law and equity caused considerable uncertainty in the determination of jury trial rights; the liberal joinder provisions and the broad, sometimes mandatory, counterclaim provisions of the Federal Rules mixed legal and equitable causes in a single litigation with unprecedented frequency. The Federal Rules, however, are something short of the Constitution and, by virtue of the Seventh Amendment, neither party waives the right to a jury trial of a legal claim by asserting it as a counterclaim to an equitable claim. * * *"
See Beacon Theatres, Inc. v. Westover, 1959, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988, strongly supporting this case.
*508 Barron & Holtzoff, Federal Practice and Procedure, summarizes the federal view as follows:
"Rule 13(a) would be unconstitutional if it compelled a party either to waive his right to jury by pleading the counterclaim or waive the claim by not pleading it * * *. * * * The cases have adopted this reasoning and it may now be regarded as settled that the filing of a counterclaim for legal relief in an action for equitable relief, whether the counterclaim be permissive or compulsory, does not waive the right to jury trial." Barron & Holtzoff, Federal Practice and Procedure, § 405.
We have quoted more liberally from the foregoing citations than has been our custom, but when one calls to his aid a "cloud of witnesses" to establish a cause, we have found no more convincing way to do this than to let them talk. The witnesses so called were profoundly versed in the history and philosophy of trial by jury, they knew its place in our jurisprudence and they knew that those who wrote it into the constitutions, state and federal, meant to preserve it.
Now let us revert to the case at bar for a moment. Appellee and the district court of appeal take the position that striking the request for jury trial was within the discretion of the chancellor because the legal and equitable issues were so complex and interwoven and because constitutional guarantees do not extend to the enforcement of a mechanics lien, in that such statutory rights were unknown to the common law.
The language in a few cases decided before the adoption of the Rules of Civil Procedure in 1954, if read in isolation, may lend support to this contention but we do not consider such cases well grounded and then they must have been proclaimed before the writer got to the end of his lesson. We find the contrary view expressed in Rizzo v. Euclid Urbana Co., Fla.App. 1960, 118 So.2d 553, where the court said:
"* * * It is not sufficient to deny to the parties the constitutional right to a trial by jury merely because a case is complicated or because questions of addition, subtraction and other mathematical problems arise which require elementary accounting on the part of the jury to arrive at a verdict."
The compulsory counterclaim in this case is based on the alleged negligent and careless performance of Bigoney's contract for architectural services. It would be difficult to conceive a clearer case for common law action. It arises out of the main suit and entitles the defendant to a jury trial. The substance of the counterclaim and not the chancellor's discretion determines this. In fact, the chancellor's discretion vanishes and Section 3 of the Declaration of Rights takes over when the ingredients of trial by jury are shown by the counterclaim.
The case of Budd v. J.Y. Gooch Co., 151 Fla. 262, 9 So.2d 633 (1942), is relied on to support appellee's contention here, but we do not think it is applicable. The facts are similar but it was decided before the 1954 Rules of Civil Procedure were effective and none of the parties asked for a jury trial. The issues raised by the foreclosure suit are not in question here. It is only those raised by the negligence action. Under Rule 1.13 (9) the chancellor may order separate trials of the issues made by any counterclaim when the ends of justice require.
A study of the federal cases quoted and relied on to fortify our position reveals that they are more compelling in their attitude toward jury trials than our own, if that be possible. Since we have called them to our aid it occurs to us that they were written with the Seventh Amendment to the Federal Constitution in mind and being so, that amendment should be brought to the reader's attention. It provides:
"In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury *509 shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."
Section 3, Declaration of Rights, Constitution of Florida, no less than the Seventh Amendment to the Federal Constitution, preserves the right to trial by jury and planted deep in American law the distinction between legal and equitable causes of action. All the attempts by rule or statute to merge law and equity have done no more than produce the liberal joinder, the compulsory counterclaim and their counterparts which, as in this case, have created some confusion. They have discarded the old common law forms of action that were in use when the writer was admitted to the bar and are lucidly discussed in "The Common Law" by Mr. Justice Holmes. Equity was designed to level the inequalities and rough places in the common law but it was never expected to take the place of the common law or such part of it as was guaranteed by the state and federal constitutions.
Other cases could be cited in support of our thinking on the concept of trial by jury and its place in our jurisprudence. The cases we have cited show that it was at one time the right arm of common law but that it is now the dividing line that separates law from equity and that it is guaranteed by the state and federal constitutions. It has had a long and distinguished history and is now one of the main avenues through which the common man directs the working of democracy. To hold that the mere discretion of a chancellor can set it at naught tends to agitate the butterflies in the stomach of an old common law lawyer who imbibed the common law from Coke, Blackstone, Holdsworth's History of English Law, Lord Campbell's Lives of the Chief Justices, and Mr. Justice Holmes' The Common Law.
In summary, we hold that the filing of a compulsory counterclaim for relief cognizable at law in an action for equitable relief does not constitute the counterclaimant's waiver to the right to a jury trial of the issues raised by said compulsory counterclaim, provided, jury trial is timely demanded.
For the reasons above stated, the decision under review is accordingly reversed and the cause is remanded to the District Court of Appeal, Second District, for further proceedings not inconsistent with this opinion.
It is so ordered.
DREW, C.J., and THOMAS, ROBERTS and THORNALL, JJ., concur.