[No. 20891. Department One. January 24, 1928.]

W. G. HEDGECOCK et al., Respondents, v. LOUIS L.
MENDEL et al., Appellants.[1]

[1] PLEADING (73)—REPLY—DEPARTURE FROM COMPLAINT. In an
action for specific performance, it is not a departure for plain-
tiffs' reply to correct the statements of fact in the complaint
on which the action was based, where there was no abandon-
ment of the cause.

[2] PLEADING (202)—DEFECTS—WAIVER OF OBJECTIONS TO REPLY.
The objection that a reply constitutes a departure from the
complaint cannot be raised by objection to the testimony at the
trial without having moved against the pleading and given
opportunity to correct it.

[3] PARTIES (2)—SPECIFIC PERFORMANCE (39)—PROPER PARTIES
PLAINTIFF. In an action to compel specific performance of a
clause in a lease respecting the lessor's consent to a proposed
assignment of the lease, the intending assignee is a proper
party plaintiff.

[4] PLEADING (196)—DEFECTS—WAIVER OF OBJECTION TO COMPLAINT
—PLEADING OVER. A demurrer to a complaint for want of suf-
ficient facts is waived where defendants answered and in a
reply and also a complaint amended to conform to the proof,
the defect in the original complaint was cured.

[5] LANDLORD AND TENANT (38)—TERM FOR YEARS—TERMINATION—
SURRENDER—WHAT CONSTITUTES. A lease is not terminated by
the lessee's attempt to exercise an option to purchase, and suit
for damages when the lessor refused to recognize the option,
where thereafter the suit was voluntarily dismissed and the
lessor accepted rents under the lease.

[6] ESTOPPEL (33)—EQUITABLE ESTOPPEL—INCONSISTENT POSITION IN
FORMER PROCEEDING. A party cannot plead matters inconsistent
with his pleadings in a former action between the same parties.

[7] LANDLORD AND TENANT (24)—SPECIFIC PERFORMANCE (23)—AS-
SIGNMENT—COVENANTS AS TO ASSIGNMENT—CONTRACTS THAT MAY
BE SPECIFICALLY ENFORCED—SUBJECT TO CONDITIONS. A provision
in a lease against assignment without the written consent of
the lessor, adding that consent "shall be given if the assignee
is a fit and proper person" with sufficient financial resources,
is a covenant on the part of the lessor that may be specifically
enforced.

[1]Reported in 263 Pac. 593.

Appeal from a judgment of the superior court for King county, Ralston, J., entered January 19, 1927, upon findings in favor of the plaintiffs, in an action for specific performance, tried to the court. Affirmed.

*John F. Dore* and *F. C. Reagan,* for appellants.

*Warren H. Lewis* and *Tucker, Hyland & Elvidge,* for respondents.

MITCHELL, J.—Louis L. Mendel and his wife, the owners of lot 6, block 6, of the plat of Seattle as laid out by the heirs of Sarah A. Bell, deceased, entered into a duly acknowledged written contract on May 13, 1924, by which they leased the property to W. G. Hedgecock for the period commencing June 1, 1924, and ending December 31, 1973. The lease provided for the payment of monthly rentals in specified amounts and also gave the lessee the option to purchase the property within each two years, three years and five years at prices fixed in the contract. The lease further provided:

"This lease cannot be assigned without the written consent of lessors, but such consent shall not be withheld for any captious reasons, but shall be given in the event that the assignee presented is a proper and fit person or corporation with financial resources of sufficient amount to render the lessors safe in so consenting. Should a contest arise as to the character or fitness of any proposed assignee, it must be referred to a board of 3 arbitrators,—one chosen by lessors, one by lessee, and the two so chosen to select the third. Any assignment made shall not remove the necessity of getting the consent of lessors to any other or further assignments. Lessee shall pay lessors $50.00 in the case of each assignment to cover their bother and expenses."

The respondents Hedgecock took and have continued in possession of the property at all times since,

paying the rent to and including the month of July, 1926, since which time the rent has been tendered to and refused by the lessors.

This action was commenced in July, 1926, by Hedgecock and his wife and Real Estate Improvement Company, a corporation, against Mendel and wife. The complaint sets out the lease and, among other things, it was alleged that, on July 2, 1926, while the lease was in full force and effect and all rentals paid, Hedgecock and wife for a valuable consideration executed and delivered a written assignment of the lease to the Real Estate Improvement Company and that it by its writing, executed and delivered, accepted the assignment; that, on the same day, plaintiffs requested and demanded of the defendants their written consent to the assignment of the lease, and tendered them fifty dollars in accordance with the terms of the lease, which tender was refused, but kept good by deposit in court with the filing of the complaint; that the assignee was a fit and proper person, with resources sufficient to make the lessors entirely safe in consenting to the assignment; that, defendants refusing to consent to the assignment without giving any reason, Hedgecock and his wife then proceeded under the terms of the lease and appointed an arbitrator, of which they gave defendants written notice thereof on July 3, 1926, and that the defendants failed and refused to appoint an arbitrator as required by the notice and terms of the lease; and that the refusal of the defendants to consent to the assignment and to appoint an arbitrator was captious and arbitrary, leaving plaintiffs without any relief, except an appeal to equity in praying judgment that defendants be required to specifically perform their covenant to consent to the assignment.

A demurrer on the ground of misjoinder of parties plaintiff, and also that the complaint did not state facts

sufficient to constitute a cause of action, was interposed by the defendants and overruled. The defendants answered, denying the material allegations of the complaint and plead affirmatively three matters as defenses. First, they alleged that the assignment to the Real Estate Improvement Company was without the lessor's consent or requested consent, and that, therefore, the lease became forfeited and that they had thereafter refused to accept any rent. Second, they plead the provision of the lease giving the lessee the option to purchase the premises and alleged that in November, 1925, the lessee had exercised such option. Third, they alleged that, after exercising the option to purchase, Hedgecock and his wife commenced an action against defendants in the superior court to recover $50,000 damages for breach of the contract to convey the lands, and that, by reason of the commencement of that action, the lease had been terminated.

A reply was filed, denying generally the affirmative matters in the answer and changing somewhat some of the averments in the complaint, in this respect, viz: it was now alleged that the assignment of the lease and the acceptance of it, both being in writing, had not been delivered except in escrow, conditional upon and to abide the procurement of the consent of the lessors to the assignment, and that they had at all times since remained in escrow. Further replying, it was admitted that in November, 1925, plaintiffs Hedgecock attempted to exercise an option to purchase and thereafter brought the action referred to by the defendants, but it was alleged that the defendants refused to acquiesce in the attempt of the plaintiffs Hedgecock and refused to perform their part, and that on April 5, 1926, in that action the Hedgecocks took an order voluntarily dismissing their action without prejudice, and that, during all of said time, the de-

fendants, insisting upon the terms of the lease, regularly accepted rent according to the terms of the lease until and including the month of July, 1926, and that defendants had waived what rights, if any they might otherwise have, and are estopped to dispute the existence of the lease. The reply was in no way moved against.

Upon these pleadings the case was tried. The plaintiffs proved, as alleged in their reply, that the assignment of the lease and the acceptance of it were placed in escrow to abide the result of an attempt to procure the consent of the lessors to the assignment. Before a decision in the case, an order was made upon application of the plaintiffs allowing an amendment to the complaint in this respect to conform to the proof. Other facts alleged in plaintiffs' pleadings were also sustained by a preponderance of the evidence. Further, plaintiffs proved, without objection by the defendants, that in the latter part of July, 1926, and about the time the present suit was brought, Mendel and wife brought an action against Hedgecock and wife and the Real Estate Improvement Company to cancel this same lease upon the ground that Hedgecock, in violation of the terms of the lease, had assigned it to the Real Estate Improvement Company without the consent of the lessors. The complaint in that action alleged the giving and serving upon the Hedgecocks and the Real Estate Improvement Company of notice of the breach of the contract in the particular mentioned and that, unless Hedgecock performed all the conditions, covenants and agreements of the lease or surrendered the premises within ten days to Mendel and his wife, they would be guilty of unlawful detainer and that the lessors would cancel and terminate the lease and retain the $1,200 theretofore deposited with

lessors under the terms of the lease. Issues were made up in that case which came on for trial at the same time as the present case, now on appeal. Taking that case up first, an oral demurrer that the complaint did not state facts sufficient to constitute a cause of action was sustained, because, as shown by the complaint on its face, only ten days' notice of intended cancellation was given, whereas the lease, by its terms, required thirty days' notice. The plaintiffs therein refusing to plead further, judgment was entered dismissing that action.

In the present case, there was judgment for the plaintiffs as demanded in their complaint. The defendants have appealed.

[1, 2] At the time proof was offered that the assignment of the lease and the acceptance of it had been placed in escrow to abide getting the lessors' written consent, which occurred after considerable other evidence had been introduced, appellants objected to it on the ground that it was a departure from the allegations of the complaint. They expressed no surprise, nor did they ask for any continuance. Clearly there was no abandonment by the respondents of their cause of action, but only a corrected statement of the facts upon which the action rested. At no time were they demanding anything other than specific performance. Besides, the appellants could not raise the question at that time and in that way. The reply had been served on them and filed more than a month before the trial. In *Erickson v. McLellan & Co.*, 46 Wash. 661, 91 Pac. 249, in speaking of the remedy against departure it was said:

"Neither is it the proper remedy for such a defect to go to trial and object to the introduction of evidence. The pleading should be moved against, so that the pleader may have an opportunity to correct it without

the delay and expense of taking a nonsuit and commencing his action over again.''

And in the case of *Hallidie Mach. Co. v. Whidbey Island S. & G. Co.*, 73 Wash. 403, 131 Pac. 1156, 45 L. R. A. (N. S.) 40, discussing the claim that there was a departure in the reply, it was said:

''It was not a new cause of action, though it may have pleaded facts which should have been pleaded in the complaint. The first objection to the pleading of these facts in the reply occurred at the trial, some five months after the service and filing of the reply. Clearly no prejudice occurred to appellant's right by overruling the objection to introduction of evidence because of the alleging of these facts in the reply instead of in the complaint. *Erickson v. McLellan & Co.*, 46 Wash. 661, 91 Pac. 249.''

[3] Contrary to assignments of error we think the Real Estate Improvement Company was a proper party plaintiff. The relief sought was to compel the defendants to perform one of their covenants which would result in an effective assignment of the lease to that company.

[4] Because the complaint alleged that the lessees had made and delivered an assignment of the lease without the consent of the lessors, it was contended that thereby the lease had been broken and therefore the complaint did not state facts sufficient to constitute a cause of action. If the point be conceded, the appellants have waived it. They did not stand upon their demurrer. They answered, and to their answer a reply was filed correctly stating the facts in that respect. No objection to, or motion against, the reply was made until during the trial. The evidence showed that the assignment had not been delivered to the assignee, but was held in escrow subject to getting the written consent of the appellants to the assignment.

The trial court was called upon to decide the case and we must consider it upon the proofs. The complaint was amended, as we have seen, to conform to that proof.

[5] It is contended that the Hedgecocks, acting under the terms of the lease, exercised an option to purchase the premises and that, by their commencing an action in November, 1925, to recover damages for breach of the contract by the appellants to convey the premises, the lease had been thereby terminated. We think appellants misconceive the true situation. This case is to be determined upon the relation of the parties as it existed when the lessee made the conditional assignment and then requested appellants' consent thereto, July, 1926. Had the parties stood on their rights as they existed at the time the Hedgecocks commenced their action for damages in November, 1925, appellants' arguments would be important. But that they did not do. On the contrary, during the rental year, June 1, 1925, to June 1, 1926, the Hedgecocks regularly paid the monthly rent of two hundred dollars as fixed in the lease, and for the months of June and July, 1926, they paid the monthly rent of two hundred and fifty dollars as the lease required. The testimony shows that the payments were made and accepted "under the lease". Clearly that line of conduct was an abandonment by the Hedgecocks of their attempt to exercise an option to purchase and also of their election to sue for damages, with the consent of the appellants.

[6] Again, seven days before the complaint in this case was verified, Mendel and wife served their complaint on the Hedgecocks and the Real Estate Improvement Company for judgment cancelling this same lease on the ground that it had been broken by the Hedgecocks because of their assignment of it on

July 2, 1926. A party will not be permitted to plead matters which are inconsistent with his pleadings in a former action between the same parties. For the reasons above stated we think the appellants are precluded from claiming that the lease was not in force on July 2, 1926.

[7] Finally the appellants contend, as we understand, that the agreement with respect to the assignment of the lease contains no covenant on the part of the lessors, that the covenant is for the benefit of the lessors. A number of cases are cited and relied on where the stipulation was simply against assignment or sub-letting by the lessee without the consent of the lessor. But the covenant here amounts to more than that. Also they cite cases where the language, in effect, was that the lessee covenants not to assign without the written consent of the lessor, *such consent not being arbitrarily withheld,* which the courts have held not to be a covenant on the part of the lessor but simply a qualification of the lessee's covenant. A typical case is *Treloar v. Bigge,* 9 L. R. Exch. 151. The language of the lease there was:

"And the said Thomas Treloar (the plaintiff) doth covenant with the said T. E. Bigge (the defendant) that he shall not nor will assign this present lease, or let, etc., or otherwise part with the premises hereby demised, or any part thereof, without the consent in writing of the said T. E. Bigge, such consent not being arbitrarily withheld."

That language of the lease was immediately followed with these words:

"Provided, always, that if the said T. Treloar shall at any time assign, let, etc., the said premises, or any part thereof, without the consent in writing of the said T. E. Bigge first had and obtained, but such consent is not to be arbitrarily withheld, then it shall be lawful for T. E. Bigge to re-enter."

In the main opinion in that case, it was said:

"Two questions arise in this case, the first being whether certain words introduced in the clause prohibiting assignment, and whereby the plaintiff covenants not to assign without license in writing, amount to an absolute covenant on the part of the lessor not to withhold his consent arbitrarily. I am of opinion that they do not constitute a covenant on which the lessee can sue, but are words, the only effect of which is to qualify the generality of the phrase into which they are introduced. The plaintiff covenants that he will not assign the lease or the premises demised 'without the consent in writing of the said T. E. Bigge' (the defendant) 'first had and obtained,' and if the words stopped there the tenant's covenant would be absolute, but they are qualified by the words 'such consent not being arbitrarily withheld.' . . . The words, taken grammatically, do not seem to me to amount to an undertaking by the lessor, but are a part of the same sentence as that containing the lessee's covenant, and qualify its generality. They prevent that covenant operating in any case of arbitrary refusal on the part of the lessor, that is, in any case where, without fair, solid and substantial cause, and without reason given, the lessor refuses his assent. I have known in my own experience several cases in which actions have been brought for the arbitrary withholding of consent by a landlord. But in all (as in the case of *Sheppard v. Hong Kong and Shanghai Banking Corporation,* 20 W. R. 459,) there was a covenant in express terms, so as to give the lessee a right of action. In the present case, for the reasons I have given, I think there was no such covenant.

"Then it is contended that a covenant is contained in the proviso, and it is quite possible that if the words there used, and on which reliance is placed, had been used in another part of the deed, they might have been properly construed as amounting to a covenant. But the two clauses which follow each other must be taken together. The language is somewhat varied in the proviso, but substantially is to the same effect as that used in the covenant. It shews the description of re-

fusal which is to give the right of re-entry. The qualified covenant not to assign is followed by the qualified covenant for re-entry.''

And again, as was said in the concurring opinion in that case:

''The true interpretation of the words, I think, is to release the plaintiff from his covenant not to assign without the plaintiff's assent, if that assent is arbitrarily withheld. If that be so they cannot be construed as creating a cross liability. They either qualify the tenant's covenant, or they create a covenant on the landlord's part. They cannot do both.''

We accept and approve the reasoning of the judges in that case and confess that it would control here if the language in the present lease contained only the words ''this lease cannot be assigned without the written consent of lessors, but such consent shall not be withheld for any captious reasons''. But it does not stop there, but there immediately follows this clause, viz:

''But shall be given in the event that the assignee presented is a fit and proper person or corporation with financial resources of sufficient amount to render the lessors safe in so consenting.''

This last clause is an affirmative promise on the part of the lessors, it is a covenant. It is the one sought to be enforced here. May it be enforced? In that portion of the main opinion in *Treloar v. Bigge* omitted from the quotation above, as indicated therein, the court said:

''Now the rule of law, no doubt, is that any words in a deed which impose an obligation upon another amount to a covenant by him; but the words must be so used as to shew an intention that there should be an agreement between covenantor and covenantee to do or not to do a particular thing. I cannot find any such intention here.''

The words in the second clause of the present lease impose an obligation. They are so used as to show an intention to agree to do a particular thing, and as further evidence of the certainty of such intention, it is stipulated that should a contest arise as to the character or fitness of any proposed assignee it must be referred to a board of arbitrators.

We shall not review other authorities cited. The language involved constituted a covenant capable of enforcement within equitable principles and the proof in the case fully warrants the decree requiring it to be performed.

Affirmed.

MACKINTOSH, C. J., TOLMAN, PARKER, and FRENCH, JJ., concur.