244 So.2d 467 (1970)
Gosta TOLLIUS, Appellant,
v.
DUTCH INNS OF AMERICA, INC., Alan B. Kessler, Jerome H. Weinkle and Liveco, Inc., Appellees.
No. 69-1011.
District Court of Appeal of Florida, Third District.
November 17, 1970.
Rehearing Denied December 14, 1970.
*468 Hall & Hedrick, Miami, and Michael D. Martin, Lakeland, for appellant.
Shutts & Bowen, and Herbert L. Nadeau, McCarthy, Steel, Hector & Davis, and William B. Killian, Miami, for appellees.
Before CHARLES CARROLL, BARKDULL and HENDRY, JJ.
PER CURIAM.
Some time prior to 1960, the appellant was the owner of an unimproved parcel of land in Dade County, Florida. On September 20, 1960, he leased same to Causeway, Inc., for 99 years. He advanced money to the corporation and received 20% of the capital stock thereof, the balance of the stock being owned by the appellees, Weinkle and Kessler. Thereafter, he loaned the lessee corporation an additional $25,000.00. A construction mortgage was arranged from a local financial institution and a motel was erected on the property, affiliated with the Holiday Inns of America.
The parties had numerous difficulties and Tollius ultimately sold his capital stock interest in Causeway, Inc. to Weinkle and Kessler, and cancelled his $25,000.00 obligation in exchange for a raise in rent from $6,500.00 per year, as originally provided, to $16,000.00 per year. Subsequently, the 99-year lease was assigned to Weinkle and Kessler, individually. They sought approval of the assignment, in accordance with the terms of the lease.[1] On June 4, 1964, Tollius declared the assignment invalid[2] because of the failure of Weinkle and Kessler to execute an assumption agreement as assignors of the 99-year lease, in accordance *469 with the provisions of the agreement.[3] It is noted that no default or declaration of the end of the term was declared by the lessor and he began [or continued] accepting rent from Weinkle and Kessler.[4]
In May of 1967, Weinkle and Kessler assigned the 99-year lease to Dutch Inns of America. At this time, they sent a copy of the assignment and a copy of an assumption agreement from Dutch Inns of America to Tollius. With all rental payments being current under the terms of the basic lease at this time Tollius, through his counsel, indicated acceptance of the assignment by Weinkle and Kessler to Dutch Inns of America subject to satisfactory evidence of the financial condition of Dutch Inns of America.[5] Thereafter, between June of 1967 and April 10, 1968, Dutch Inns attempted to satisfy Tollius as to the financial stability of Dutch Inns. During this period, rental checks were forwarded to Tollius in the form of cashiers' checks by attorneys representing Weinkle and Kessler and Dutch Inns, this being the method of payment agreed to between the parties pending the determination by Tollius as to the financial stability of Dutch Inns. Following receipt of a certified audit in the spring of 1968, Tollius served a written notice of default, declaring the basic lease terminated allegedly for failure to supply assumption agreements upon assignment, and not because of any alleged lack of financial responsibility of Dutch Inns [the only objection given in the summer of 1967 to this assignment].
During this same spring, representatives of Dutch Inns and Weinkle and Kessler negotiated with the appellee, Liveco, Inc., for the execution of a sub-lease of the property for a period of twenty years to Liveco [an experienced operator in the motel field, possessed of five other Holiday Inn operations]. Tollius participated or, at least, was aware that these negotiations were going *470 on. At this time, the property had been substantially improved over the period of the lease; had an operating motel with Holiday Inn franchise, a restaurant, cocktail lounge, and the motel consisted of 50 rooms with a value of $950,000.00, and its rental value had substantially increased as evidenced by the terms of the sub-lease to Liveco, which provided for an annual rental of $130,000.00. It also provided that Liveco was to make a substantial investment and further improvements.
Following delivery of the notice of default, Tollius refused to accept any further rent and, on May 17, 1968, Tollius filed an unlawful detainer action in the civil court of record. On the same day, Weinkle and Kessler, et al., filed a suit in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, seeking a declaration of rights under the lease. Subsequently, a temporary injunction was issued in the circuit court staying the proceedings in the civil court of record. This injunction was affirmed by this court in an interlocutory appeal. Tollius v. Dutch Inns of America, Inc., Fla.App. 1969, 218 So.2d 504. Issues having been joined in the circuit court upon the plaintiff's original complaint, Tollius answered and counterclaimed seeking a declaration of rights, accounting, receivership, cancellation of the basic 99-year lease, and cancellation of the sub-lease to Liveco. The cause came on for final hearing, wherein the circuit judge found adverse to Tollius in the following particulars:
* * * * * *
"There has been no default in the payment of rent and the greater weight of the evidence fails to establish the financial irresponsibility of Dutch Inns.
* * * * * *
"The acts and conduct on the part of defendant, Gosta Tollius, have been such as to give rise to a waiver of any right he may have or has had under said lease to declare a default thereunder by reason of any assignments of said lease without his written consent, and is therefore estopped to declare such termination and forfeiture.
* * * * * *
"Under the circumstances, it would be an arbitrary and unreasonable act on the part of Tollius to withhold consent to the sublease to Liveco.
* * * * * *
"The Court finds that the equities are with the Plaintiffs and the subleasee, Liveco, Inc., and against the Defendant, and that a forfeiture and termination of the Lease and Sub-lease would result in an unconscionable financial loss to the Plaintiffs and to Liveco, Inc., and an unconscionable gain to the Defendant."
* * * * * *
Following the above findings, the circuit judge held that the basic 99-year lease and all assignments, including the sub-lease to Liveco, were valid. Tollius has appealed and assigned numerous errors.
The material facts were not in dispute. Weinkle and Kessler admitted the receipt of their assignment and their refusal to execute the assumption agreement. The 1964 notice of invalid assignment was in writing. Tollius admitted that he continued to receive rent subsequent to giving the notice, and this legally constituted a waiver of the provisions of the lease relative to the assignment and assumption agreement. Farmers' Bank and Trust Company v. Palms Publishing Company, 86 Fla. 371, 98 So. 143; Steen v. Scott, 144 Fla. 702, 198 So. 489; U.S. Properties, Inc. v. Marwin Corp., Fla.App. 1960, 123 So.2d 371; Tropical Attractions, Inc. v. Coppinger, Fla.App. 1966, 187 So.2d 395; 49 Am.Jur.2d, Landlord & Tenant, §§ 421, 1067. Further evidence of his approval of the assignment to Weinkle and Kessler was his letter of June 27, 1967 when, admittedly, he received a written assignment from Weinkle and Kessler to Dutch Inns of America, Inc., and a written assumption agreement by Dutch Inns of the terms of the underlying basic *471 lease. And, his reason for withholding approval of the assignment was until he determined the financial condition of Dutch Inns of America, Inc. At this time, it was incumbent upon Tollius, as the lessor, to declare any other defaults which might have existed.[6] Failing to do so, as a matter of law he waived all objections except that indicated in his letter of transmittal. Wing, Incorporated v. Arnold, Fla.App. 1959, 107 So.2d 765; Independence Flying Service, Inc. v. Abitz, S.Ct.Mo. 1965, 386 S.W.2d 399; 49 Am.Jur.2d, Landlord and Tenant, § 1065; 51C C.J.S. Landlord and Tenant §§ 117(2), 117(3).
Subsequently, in the spring of 1968, when he rejected Dutch Inns as an assignee, the trial court found that he wrongfully withheld approval of this assignment; that, in fact, Dutch Inns of America, Inc. was financially stable and in fact the record reveals was in a better financial condition than the original lessee. The evidence shows that the original lessee had a nebulous net worth at the time of the execution of the basic lease; whereas, at the time of the assignment to Dutch Inns, Dutch Inns had a net worth in excess of $3,500,000.00. Therefore, there being substantial competent evidence in the record to support the trial court's determination [that the proposed assignee was financially stable], Tollius' refusal to approve the assignment was an arbitrary action, and no error has been demonstrated in the trial court's ruling on this point. Seiff v. Presto Brick Machine Corp., Fla.App. 1964, 168 So.2d 700; Miami Beach First National Bank v. Shalleck, Fla.App. 1966, 182 So.2d 649; Bankers Life and Casualty Company v. Pinkerton-Hays Lumber Company, Fla. App. 1966, 186 So.2d 551; Daniels v. Lake Pleasant Land Company, Fla.App. 1967, 193 So.2d 679.
The lease to Liveco, Inc. was, in fact, a sub-lease, it being for less than the balance of the term of the basic lease. Johnson v. Thompson, 185 Ala. 666, 64 So. 554; Cities Service Oil Co. v. Taylor, 242 Ky. 157, 45 S.W.2d 1039; Marcelle, Inc. v. Sol & S. Marcus Co., 274 Mass. 469, 175 N.E. 83; 20 Fla.Jur., Landlord and Tenant, § 64; 49 Am.Jur.2d, Landlord and Tenant, § 480. The sub-tenant has not atoned to the lessor and no attempt was made to substitute the sub-tenant for Dutch Inns and, in fact, all rental payments have been made by Dutch Inns. Even if, in the giving of the assignment to the sub-tenant, it was necessary to secure the approval of the lessor before the lease could be terminated, it would be necessary for the lessor to serve a notice of default in accordance with the terms of the lease[7] and advise the sub-tenant. This has not been done. The only basis for the refusal to approve the sub-lease was the alleged termination of the basic lease term because of a breach of conditions of the 99-year lease [notice having previously been given alleging a breach in conditions by failure to have the various assumption agreements executed]. It further appears that even if the lessor rightly refused to consent to an assignment of a sub-lease, under the terms of the lease the original lessee and all subsequent assignees remained liable for the payment of the rent.[8] The most that should happen in *472 equity, upon a rightful refusal to consent to an assignment or sub-lease, should be a cancellation of the assignment or sub-lease involved because the effect of additional assignees or sub-tenants is not a substitution instead of the original lessee, but merely offers additional security to the lessor. Dixie Fire & Casualty Co. v. Esso Standard Oil Company, 265 N.C. 121, 143 S.E.2d 279; Gale Industries, Inc. v. Bristol Farmers Market & Auction Co., 431 Pa. 464, 246 A.2d 391; 49 Am.Jur.2d, Landlord and Tenant, §§ 500, 501; 51C C.J.S. Landlord and Tenant § 47.
One of the principal points urged for reversal by Tollius is the failure to accord him a jury trial in the circuit court on alleged issues to which he would have been entitled in the unlawful detainer action. First, all the material facts being admitted [including receipt of all the rental due], it was a question of law for the court on the issue of waiver of the alleged defaults in the basic lease. Boston & Maine R.R. v. Hannaford Bros. Co., 144 Me. 306, 68 A.2d 1; General Finance Corporation v. Jackson, S.Ct., Okl. 1956, 296 P.2d 141. Second, the propriety of the circuit court suit was sustained in the interlocutory appeal, and that decision became the law of the case. Higbee v. Housing Authority of Jacksonville, 143 Fla. 560, 197 So. 479; King v. Citizens and Southern National Bank of Atlanta, Ga., Fla.App. 1960, 119 So.2d 67; Walker v. Atlantic Coastline Railroad Company, Fla.App. 1960, 121 So.2d 713; Texaco, Inc. v. Parker, Ct.Civ.App., Tex. 1963, 373 S.W.2d 870. Further, this court has recently held that landlord and tenant summary proceedings are not the proper forum to cancel a long term lease, wherein the court said the following in the case of Southeastern Fidelity Insurance Company v. Berman, Fla.App. 1970, 231 So.2d 249:
* * * * * *
"We hold that unlawful detainer is not the proper remedy where it is obvious to the trial judge that plaintiff is substantially seeking an adjudication of title by having the alleged lease declared invalid. Cf. Hewitt v. State, supra; Florida Athletic and Health Club v. Royce, 160 Fla. 27, 33 So.2d 222 (1940); and Knott v. Smith, 79 Fla. 628, 84 So. 660 (1920). * * *"
* * * * * *
We find no error in the trial court's ruling on this point.
The material facts which constituted a waiver or estopped to raise the alleged default were admitted; the facts having been admitted, it was a question of law as to the waiver or estoppel. Foster v. L.M.S. Development Co., Tex.Civ.App. 1961, 346 S.W.2d 387, 28 Am.Jur.2d, Estoppel and Waiver, § 149. The question of whether or not Tollius arbitrarily withheld his approval of the assignment to Dutch Inns because of the alleged financial instability was a matter properly to be determined by a chancellor in an equity proceeding. See: Hedgecock v. Mendel, 146 Wash. 404, 263 P. 593. The material facts not being in dispute and the issue, as raised by the alleged notice of default in 1968, being traditionally a chancery matter, no error is demonstrated in the trial court's refusing to grant a jury trial. Further, it is readily apparent that a judgment at law could not order the lessor to consent to the assignment or, in lieu thereof, for the judgment to constitute approval; this could only be done in equity.
It is conceded that the landlord has received every payment due him under the terms of the basic lease. It is conceded that his property has been substantially enhanced in value by the construction of the motel thereon, affiliated with a national chain; and it presents a classic case for equity to prevent a forfeiture. Equity abhors forfeitures. To permit Tollius to cancel this lease and reap the improvements on the property would be to give him his rent for the past ten years and deliver to him a property with a gross worth in excess of $950,000.00 and a net value of approximately $500,000.00. This cause falls *473 squarely within the principles enunciated in 27 Am.Jur.2d, Equity, § 140, page 675:
"* * * Where the purpose or object of the suit is to accomplish something which will produce an inequitable or unconscionable result, equity will not grant affirmative relief. * * *"
Baker v. Clifford-Mathew Investment Company, 99 Fla. 1229, 128 So. 827; Rader v. Prather, 100 Fla. 591, 130 So. 15; Rivers v. Amara, Fla. 1949, 40 So.2d 364; Humphrey v. Humphrey, 254 Ala. 395, 48 So.2d 424; Frank v. Dodd, Mo. App. 1939, 130 S.W.2d 210; Wilson v. Watt, S.Ct.Mo. 1959, 327 S.W.2d 841; 49 Am.Jur.2d, Landlord and Tenant, § 1076.
A different situation might have been presented if no improvements had been made to the property since the inception of the lease, because then the lessor gets back what he leased plus the monies he received, less depreciation if any. In the instant case, if the lease were cancelled the lessor would get not only his monies under the lease but his property substantially improved and enhanced in value. In the former situation, the property has the opportunity to depreciate; in the present situation, the property could only be enhanced in value.
The final judgment here under review be and the same is hereby affirmed.
Affirmed.
HENDRY, Judge (dissenting).
I respectfully dissent from the majority opinion that holds that appellant was not entitled to a jury trial.
This litigation began with the appellant filing suit for unlawful detainer against the appellees in the Civil Court of Record and the appellees filing suit, on the same day, in the Circuit Court for declaratory relief and for an injunction enjoining the appellant from proceeding with his unlawful detainer action. The Circuit Court granted the injunction and took jurisdiction of the causes.
Inasmuch as appellant was enjoined from proceeding in the unlawful detainer action he was compelled to seek his relief by way of a counterclaim in the equity suit in the Circuit Court. I do not think he lost his right to a jury trial, which he was entitled to in the unlawful detainer action, by being forced to litigate his grievances by way of a counterclaim in the equity suit.
A legal counterclaim in equity does not deprive the party asserting the legal claim of the right to a jury trial. Hightower v. Bigoney, Fla., 156 So.2d 501, 17 A.L.R.3d 1308, quashing Fla.App. 1962, 145 So.2d 505; Declaration of Rights, § 22, Fla.F.S.A. Const. 1885; Ch. 82, Fla. Stat. 1967, F.S.A. In Hightower, plaintiff sued to foreclose his architect's lien, to which the owners of the house counterclaimed for his professional negligence and demanded a jury trial. On certiorari, the Florida Supreme Court stated at p. 509 of 156 So.2d:
"In summary, we hold that the filing of a compulsory counterclaim for relief cognizable at law in an action for equitable relief does not constitute the counterclaimant's waiver to the right of a jury trial of the issues raised by said compulsory counterclaim, provided, jury trial is timely demanded."
(I do not reach the question that Tollius may be entitled only to a jury trial of certain issues with respect to Liveco under Rule 1.430(b), Florida Rules of Civil Procedure, 30 F.S.A.)
The issues in the instant appeal are not within the principle known as the law of the case because the earlier decision, Tollius v. Dutch Inns of America, Inc., Fla.App. 1969, 218 So.2d 504, settled only that the injunction pendente lite was proper. See 43 C.J.S. Injunctions § 185, pp 874-875.
The main thrust of the counterclaim of the lessor, was to obtain possession of the premises. Any cancellation of the lease agreements would be incident to a finding *474 of lawful possession in the lessor, particularly where the lessor alleges that the lease contract had been already breached. However, assuming arguendo that the counterclaim was essentially for a declaratory decree with a request for supplemental relief, under the circumstances of this case it would be an abuse of discretion by the chancellor to deny the counterplaintiff's request for a jury trial (see Olin's Inc. v. Avis Rental Car System of Florida, Fla.App. 1961, 131 So.2d 20).
For the reasons stated I would reverse.
NOTES
[1] "* * * provided, however, that Lessee shall not sell, assign or sublet any or all of its rights and privileges under this lease without first obtaining Lessor's written consent. * * *"
[2] Letter dated June 4, 1964, reads as follows:

* * * * *
"On this date we received a reply from Mr. Tollius to our letter in which we enclosed the consent to assignment of lease. Since Mr. Tollius' explanation of his view is well set forth in his letter, I enclose a copy herewith. In essence he declines to assent to the assignment unless the assignees specifically assume and agree to perform the obligations of the lease.
"In view of the fact that he has declined to consent, the assignment itself is invalid and constitutes a breach of the lease."
* * * * *
[3] "(a) No assignment or transfer shall be valid, unless the assignee thereof shall expressly assume and agree to perform each and every of the covenants of the lease which, by the terms hereof, the Lessee agrees to keep and perform, and such assumption on the part of the assignee shall be evidenced by a written instrument, executed in such fashion as to entitle it to recording * * *."
[4] "1. If the Lessee should fail to keep and perform any of the terms, conditions, covenants and provisions of this lease contained to be kept and performed by Lessee, then it shall and may be lawful for the Lessor, at the Lessor's option, to declare said demised term ended, * * *."
[5] Letter dated June 27, 1967 reads, in part, as follows:

* * * * *
"Re: Assignment and Assumption of Lease from Jerome H. Weinkle and Alan B. Kessler to Dutch Inns of America, Inc., of property at 2500 Brickell Ave., Miami, Florida.
* * * * *
"This will acknowledge receipt of your letter of June 14, 1967, wherein you enclosed an executed copy of the Assignment of Lease in the above matter.
"In a prior letter to your firm I advised that Mr. Tollius must have the financial statement of Dutch Inns of America, Inc. in order to determine whether or not he should consent to the assignment. * * *"
* * * * *
Letter dated August 8, 1967 reads as follows:
* * * * *
"This will acknowledge receipt of your letter of August 3, 1967, and the Cashier's Check enclosed therewith. That check was made payable to Gosta Tollius and represents rent due for August, 1967, on the property located at 2500 Brickell Avenue, Miami, Florida. This check was accepted with the understanding that Mr. Tollius does not recognize the assignment from Messrs. Weinkle and Kessler of the Causeway Motel Lease to Dutch Inns of America, Inc. The reason for this policy is that Dutch Inns of America, Inc. has declined to furnish a certified financial statement. Without such a statement Mr. Tollius is unable to ascertain whether this corporation is sufficiently solvent to comply with the terms of the Lease.
"It will, therefore, be appreciated if you will so advise Alan B. Kessler and Jerome H. Weinkle, whom you also represent."
* * * * *
[6] "Article 8(b) In order that the Lessee may assure any proposed assignee that this lease is in good standing and not in default, the Lessor covenants and agrees that he and his successors and assigns will, within thirty (30) days after mailing to him of a notice of proposed assignment, notify the Lessee or the proposed assignee, in writing, of the existence or non-existence of any default; and if the Lessor fails so to do, then such failure shall be the equivalent of a representation by the Lessor and his successors and assigns that no default exists, and that the lease is in good standing."
[7] See footnotes [4], [6].
[8] "9. All references herein to the Lessor and Lessee mean the persons who, from time to time, occupy the positions respectively of the Lessor and the Lessee, although this shall not be construed as relieving a person of any liability incurred by him, her or it, by reason of or in connection with his, her or its having been Lessor or Lessee at one time. * * *"