378 So.2d 58 (1979)
David PADGETT and Marty Padgett, Husband and Wife et al., Appellants,
v.
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF SANTA ROSA COUNTY, Florida et al., Appellees.
No. NN-40.
District Court of Appeal of Florida, First District.
December 10, 1979.
*60 Frank O. Burge, Jr., and James H. Wettermark of Frank O. Burge, Jr., P.C., Birmingham, Ala., and James R. McAtee, Pensacola, Hugh V. Smith, Jr. of Mizell, Smith & Moore, Montgomery, Ala., for appellants.
Donald H. Partington of Clark, Partington, Hart & Hart, Pensacola, for appellees.
LARRY G. SMITH, Judge.
In this case appellants suffered the entry of a final judgment of foreclosure against property owned by them in Escambia County, and dismissal with prejudice of their complaint against the mortgagee and other defendants. They rely for reversal upon alleged errors committed by the trial judge in denying their motion for continuance, motion for jury trial, and in granting the motions of the several defendants for involuntary dismissal of their complaint with prejudice. We affirm in part and reverse in part.
This litigation commenced when appellants filed a three count lawsuit against several defendants, among them First Federal Savings and Loan Association of Santa Rosa County, appellee, the holder of mortgages upon appellants' property in Escambia County. Count One sought an accounting and to enjoin foreclosure of First Federal's mortgages; Count Two sought damages for alleged lost profits, loss of funds invested in construction of improvements, and other damages; and Count Three sought removal of clouds upon title to real estate and damages for disparagement of title against certain lienholders. The matters of which appellants complain may be briefly summarized as follows: They allege that when they applied for a loan with First Federal to construct a complex of townhouses, defendant Walish, the President of First Federal, recommended to them defendant Edward Porter and Trend Corporation as reputable building contractors, and made several other representations concerning the services of Porter and Trend. Appellants allege that these representations were false; that in fact Walish and Porter were business partners, that they were guilty of diverting materials intended for *61 the townhouse project to construct a home for Walish; and that First Federal improperly expended and appropriated funds from appellants' construction account. They further alleged that as a result of these and other actions they were unable to complete the townhouse project, and suffered severe monetary loss. First Federal denied the allegations of the complaint and filed a counterclaim seeking foreclosure of its mortgages. Appellants demanded jury trial on all issues "so triable". After substantial discovery was had, appellants dismissed the complaint against the various lienholder defendants in Count Three.
In November, 1978, appellants' attorney filed a motion to withdraw as their counsel.[1] On November 15, 1978, the trial judge authorized withdrawal and gave appellants five days within which to secure successor counsel.[2] Thereafter, on November 28, 1978, First Federal's attorney filed a notice of trial notifying appellants that the matter was set for trial on January 24, 1979. On January 23, 1979, an attorney from Winter Park and one from Pensacola filed a notice of appearance as new counsel for appellants. On the same date, they filed in appellants' behalf a motion for continuance of the January 24 trial based (among other grounds) upon their recent acquisition of substitute counsel, claiming that their new counsel had not had time to properly prepare for trial.[3] The Pensacola attorney appeared for the hearing on the motion for continuance, but the Winter Park counsel did not. Neither of the appellants appeared, and no evidence was presented by testimony or affidavits setting forth any facts to justify or excuse delay in obtaining counsel, nor to explain their belated motion for continuance.
The record of exactly what took place before the trial court at the time of hearing of appellants' motion for continuance and jury trial is instructive. First, it reveals that appellants' Pensacola counsel was totally unfamiliar with the file, since he had been only a few days earlier contacted by appellants' Winter Park counsel and asked to file the motion for continuance. Hearing on this motion was scheduled for January 24, at the same time scheduled for commencement of the trial. After brief discussion, counsel for First Federal related to the court his assessment of the status of the case, and he then stated:
"The issues of the mortgage foreclosure can proceed before the court. If they want to try their claim for damages we can sever that out and let them try it some day. The bank is solvent and can respond to it, if they want to try that claim."
Then counsel for defendant Richard Walish spoke up, objecting strenuously to dividing the case into any parts on the grounds that the serious charges pending against his client were extremely damaging, and needed to be resolved. He asserted to the court that the charges in the complaint had kept his client "literally unemployed and unemployable", *62 and that the case had been dragging on for better than a year.
Counsel for appellants stated to the court:
"I don't believe the matter can be severed. I think the issues, just from what I can determine from reading the complaint and what little knowledge I have of the action, which is very, very little that the issues are so interrelated that severance would not do justice to this cause. I don't think it can be severed."
The trial judge, after reviewing the file, remarked that the case was about a year old, not ordinarily an old case, but that the failure of the Padgetts to appear was a matter of considerable concern to the court. He reflected upon the fact that appellants had allowed one attorney to withdraw, and had some forty-five to sixty days within which to further appear or respond in some manner to the order to obtain new counsel. Further, said the trial judge:
"And they come in at this late time on this date and this court has a whole day set aside for this hearing. I think they have been given all the leeway that they should have been given to prosecute their claim, that they should be here today in person, at least to explain why they were so dilatory in the seeking of counsel which apparently they were. I am not blaming it on counsel, because according to you they just made arrangements last week. And I think they were dilatory and I think that justice delayed is justice denied where people apparently are doing it for some ulterior motive. I don't know what. But if they really wanted to guard their claim they should have done it more expeditiously and I don't think that this court would be in error by announcing that we are going to go forward with this claim one way or the other today and we'll all take our best holds... ."
Upon announcement by the trial judge that the case would proceed, appellants' counsel stated that appellants had no witnesses available to testify, whereupon counsel for Walish moved for dismissal of the complaint against his client, and counsel for First Federal made a similar motion. Thereafter, the court acknowledged that an order would be entered that appellants' claim would be dismissed as to defendants Walish and First Federal.[4] The mortgage foreclosure proceeding was completed, and the property was subsequently sold.
The points relied upon by appellants for reversal, though not in the order presented, are: Whether the trial court abused its discretion in denying a continuance; whether the trial court committed error in denying appellants' right to trial by jury of the legal issues presented; and whether the failure of appellees to comply with the notice provisions of Florida Rule of Civil Procedure 1.440 and Local Rule 6 of the First Judicial Circuit worked a prejudice upon appellants which justifies a new trial.
As for denial of the motion for continuance, this is a case in which serious charges were being made by appellants against First Federal and the other defendants, and in which delay in final disposition was a matter of vital concern to the defendant seeking foreclosure and sale of the property. In oral argument as well as in the brief filed in behalf of appellants, attempts have been made to justify or explain away appellants' failure to promptly proceed with their lawsuit, or, in the alternative, to furnish the trial court with evidence which might serve as the basis for a reasoned decision on the part of the trial judge to grant a continuance. Unfortunately, we cannot accept counsel's statements of fact dehors the record, nor can we find fault with the trial judge for likewise refusing to grant a continuance based solely upon the grounds stated in the motion.[5] Not the *63 slightest effort was made to support appellants' eleventh hour motion for continuance by affidavits, testimony, or requests for an opportunity to proffer any set of facts to be supported by sworn evidence at a later date to explain appellants' failure expeditiously to obtain counsel, or to proceed in proper person. We must conclude that the trial judge acted within his discretion, under all the circumstances, in refusing to grant a continuance.[6] We cannot find an abuse of discretion on the part of the trial judge based upon counsel's assertions of factual circumstances which do not appear in this record.[7]
Next we consider appellants' contention that the denial of a continuance and dismissal of their complaint for damages deprived them of their constitutional right to a jury trial on all purely legal issues. It is well settled that once a timely demand for a jury trial has been made, it can only be waived or withdrawn by the consent of both parties. Barth v. Florida State Constructors Service, Inc., 327 So.2d 13 (Fla. 1976); Rule 1.430(d), Florida Rules of Civil Procedure. Where timely demand has been made for a jury trial on issues properly triable by a jury, the defendant's failure to file pleadings (resulting in default being entered), and otherwise failing to appear in the case, cannot be deemed a waiver of jury trial. Loiselle v. Gladfelter, 160 So.2d 740 (Fla. 3rd DCA 1964).
In the light of the foregoing authorities we must examine the claims made by appellants in their complaint. Count One sought an equitable accounting and an injunction to prevent foreclosure of First Federal's mortgage. We have no difficulty in determining that these claims, as well as First Federal's counterclaim for foreclosure, presented purely equitable issues triable to the court, without a jury.
As to Count Two of the complaint, however, we think a different rule is applicable. Count Two sought money damages for fraud, misrepresentation and misappropriation of funds and property by the defendants. It also alleged First Federal's breach of an agreement to obtain a performance bond from Porter, and additional somewhat vague allegations concerning First Federal's refusal to advance additional funds, and "freezing" of appellants' construction and other accounts. Although a motion to strike certain allegations of the complaint was filed by First Federal, apparently this motion was never set down for ruling before the court, and we find in the record no order on these motions. To the extent that the complaint sought relief in the nature of monetary damages for the alleged wrongdoing on the part of the defendants, appellants were clearly entitled to request a jury trial.
We do not accept appellees' argument that the case was set for trial on these issues. The only notice of trial was the notice filed and served by First Federal, which stated that the matter was scheduled for trial before the judge, in chambers. Under the Barth case, and other decisions, as we interpret them, one party cannot deprive an opposing party of a jury trial by the device of scheduling the matter for nonjury trial. Furthermore, as for the defendants *64 Walish and Porter, we find in the record no notice or order of any kind setting appellants' claims against them for trial, either by a jury, or nonjury. So even if we interpret First Federal's notice as one calling up for trial, nonjury, all issues as to all defendants (as apparently the trial judge considered it), it was improper for First Federal to do so without appellants' express consent or waiver.
With some trepidation, we next consider the perplexing problem presented by cases such as this when there are both equitable (nonjury) and legal (jury) claims made in the same proceeding. There is no need for us to re-visit every decision expounding upon the procedural tangles growing out of the merger between law and equity, Rule 1.040, Florida Rules of Civil Procedure. It is, however, clear that the mixture of the two kinds of claims in the same case, regardless of the parties by whom or the sequence in which they are raised by their respective pleadings, cannot deprive either of the parties of a right to a jury trial of issues traditionally triable by jury as a matter of right. Hightower v. Bigoney, 156 So.2d 501 (Fla. 1963); Southwestern Life Insurance Co. v. Gerson, 187 So.2d 63 (Fla. 3rd DCA 1966); Sarasota-Manatee Airport Authority v. Alderman, 238 So.2d 678 (Fla. 2nd DCA 1970); Adams v. Citizens Bank of Brevard, 248 So.2d 682 (Fla. 4th DCA 1971); Napolitano v. H.L. Robertson and Associates, Inc., 311 So.2d 757 (Fla. 3rd DCA 1975); Wincast Associates, Inc. v. Hickey, 342 So.2d 77 (Fla. 1977).
The particular facts of each case must be examined to determine the order in which the legal and equitable issues must be tried. In Southwestern Life Insurance Company v. Gerson, 187 So.2d 63 (Fla. 3rd DCA 1966), where there was a suit to cancel an insurance policy, and a counterclaim for recovery of damages for its breach, the court held that the equitable issue of rescission should be tried first, then the jury issues, if the equity suit did not result in cancellation of the policy. In Sarasota-Manatee Airport Authority v. Alderman, 238 So.2d 678 (Fla. 2nd DCA 1970), the court held that the issue of whether or not plaintiff was entitled to the remedy of inverse condemnation was initially a nonjury issue, and if so entitled, the amount of damages recoverable would be determinable in a later jury trial. In Napolitano v. H.L. Robertson and Associates, Inc., 311 So.2d 757 (Fla. 3rd DCA 1975), the issues in an action for breach of contract and foreclosure of an equitable lien, and a counterclaim for breach of contract, "were so related" to each other that a jury trial should have been afforded on all issues. In Adams v. Citizens Bank of Brevard, 248 So.2d 682 (Fla. 4th DCA 1971), the court held that if the counterclaim (for breach of construction loan agreement as to which jury trial was demanded) is on "issues which are not common" to any issue made by the equitable complaint (for foreclosure of the mortgage), the equitable issues should be tried first. But if the issues are "sufficiently similar or related", so that a determination of the first fact finder would necessarily bind the later one, such issues cannot be tried nonjury by the court, since to do so would deprive the counterclaimant of his constitutional right to a jury trial (Adams, at page 684). In Adams, as well as the later case of Wincast Associates Inc. v. Hickey, 342 So.2d 77 (Fla. 1977), the courts pointed out that if all facets of a dispute cannot be settled at one time due to a demand for a jury trial, the trial judge can still determine, nonjury, factual issues unrelated to the jury issues, and thereby limit the scope of the jury trial (Adams, at page 685), and order a separate trial on the subsidiary issues pursuant to Rule 1.270(b), Florida Rules of Civil Procedure (Wincast, at page 79).
The Adams case is one in which the relief sought by each party is somewhat similar to the one at bar. Applying its principles, we have no difficulty in deciding that the issues of fraud, misrepresentation, and misappropriation of funds and property are not issues common to those stated in the foreclosure complaint, and there would be no error in a nonjury trial of the foreclosure *65 action preceding trial of these other issues.[8] The issue of First Federal's alleged breach of an agreement to obtain a payment and performance bond from the contractor, would, on its face, appear to be such a common issue, as would issues relating to First Federal's alleged breach of an agreement to advance funds under the construction loan agreement. However, upon closer examination of these allegations, and upon consideration of them in pari materia with the construction loan agreement itself, together with other exhibits and pleadings in the file, we conclude that under the particular circumstances present here, we are not required to reverse the foreclosure proceeding in order to afford appellants their right to a jury trial on issues to which they were entitled to one.
In their answer to the counterclaim, appellants admitted their breach of the construction loan agreement by permitting the filing of mechanic's and materialman's liens, failing to complete the buildings within the time required by the agreement, failing to carry on the construction with reasonable dispatch, and failing to obtain permits as required by applicable governmental authorities. Although they deny that a breach of these agreements is chargeable as a breach of the mortgage conditions, this contention is refuted by the plain language of the agreement itself (paragraph 15), which specifically subjects the agreement to the provisions of the notes and mortgages, "as if the agreement were fully set forth and made a part of such Notes and Mortgages". The allegations of the complaint concerning First Federal's alleged agreement to procure a payment and performance bond are likewise refuted by the agreement itself, which is attached to and made a part of the complaint. Paragraph 8 requires the contractor (Porter) to furnish the payment and performance bond to First Federal. Paragraph 9 provides that a breach of the contractor's obligation to First Federal "shall not constitute a breach" as to appellants' obligation to repay First Federal, and appellants "cannot raise as a defense" to repayment of First Federal, any breach by the contractor. Paragraph 17 provides that appellants accept the "sole responsibility" for selection of their own contractor, and that no liability can be attached to First Federal for failure of the contractor's performance, nor shall First Federal become liable for any of appellants' debts to those who supply work or materials on the project.
It has been held that inconsistency between the general allegations of material facts in a complaint and specific facts revealed by the exhibit attached to it has the effect of neutralizing each allegation, rendering the pleading objectionable. Harry Pepper & Associates, Inc. v. Lasseter, 247 So.2d 736 (Fla. 3rd DCA 1971). See Rule 1.130(b), Florida Rules of Civil Procedure. We apply this principle in this case, and in so doing, we resolve any doubts concerning the sufficiency of the pleadings to raise an issue precluding foreclosure prior to a jury trial against appellants because of their failure diligently to proceed with their own equitable complaint to enjoin the foreclosure. They submitted the matter to the court, under their Count One, seeking the equitable remedy of injunction; and we hold that it was incumbent upon appellants to proceed, on the scheduled trial date, to present a case justifying the withholding of First Federal's equitable relief until after trial of their jury claims. This they failed to do, and we are not inclined to disturb the foreclosure judgment rendered against them.
Finally, although we do not approve of the procedure followed by First Federal in scheduling this matter for trial, this court takes judicial notice that it is the custom and practice in many jurisdictions for nonjury matters to be scheduled by simply having the trial date and time reserved on the judge's calendar, followed by notice furnished by counsel to the opposing parties or their counsel. We think the only safe procedure to follow is to strictly comply with the requirements of Rule 1.440, Florida Rules of Civil Procedure, which provides *66 for an order for trial to be signed by the trial judge.[9] As for noncompliance with Local Rule 6, we think the record here demonstrates its customary non-observance. The appellate courts would be completely incapable of monitoring the daily scheduling and noticing of trial and other proceedings in the trial courts, and we must accord a fairly wide latitude to the local courts in the handling of these matters. This does not mean, of course, that a reversal will not be mandated in a proper case where the requirements of due process have been violated. In this instance, appellants have not shown prejudice directly attributable to these alleged technical violations, and we therefore find that no reversible error occurred in connection with the giving of notice of trial on First Federal's foreclosure complaint. See Davis v. Hagin, 330 So.2d 42 (Fla. 1st DCA 1976).
The order granting dismissal of appellants' complaint against Walish and Porter is reversed. The order granting dismissal of appellants' complaint against First Federal with respect to their claims for fraud, misrepresentation, and misapplication or misappropriation of funds and property, is reversed. The final judgment of foreclosure rendered in favor of First Federal is affirmed. Nothing said in this opinion shall be considered as a ruling on the merits of any claim made by appellants with respect to which we have held they are entitled to a jury trial.
This cause is reversed in part and affirmed in part, and remanded for further proceedings consistent with this opinion.
ERVIN, Acting C.J., and BOOTH, J., concur.
NOTES
[1] The certificate of service of the motion reflects service by mail upon the individual plaintiffs on November 2, 1978. The motion alleges nonpayment of monthly billings since June, 1978.
[2] The order allowing withdrawal of counsel recites nonpayment of funds as the grounds for withdrawal. It further reflects that counsel notified appellants on several occasions, in writing, of his intention to withdraw unless arrearages were paid and also orally notified them of the time and place of the hearing; and that appellants made no response and failed to appear at the hearing.
[3] The motion stated, as grounds for continuance, that the new attorneys had "just within the last week" agreed to represent the plaintiffs; that new counsel had not had an opportunity to review pleadings, depositions, etc., and required time for preparation for trial; that plaintiffs wished to amend their complaint against First Federal to allege a claim based upon loss of rental of the property in litigation; that plaintiffs desired to amend by alleging a cause of action against Trend, Inc.; that defendant Edward Porter was a material witness and that former counsel had not been able to take his deposition; that new counsel had not had sufficient time to properly prepare plaintiffs' case nor the defense to the foreclosure action; that First Federal had failed to comply with Local Rule 6 of the First Judicial Circuit in setting the matter for trial; and that plaintiffs had demanded a jury trial.
[4] A written order denying the continuance and granting the motion for involuntary dismissal was entered on the day following the hearing, January 25, 1979.
[5] The basic ground for continuance stated in the motion was lack of preparation for trial by appellants and their counsel. The desire to amend the complaint to claim loss of rent appeared unnecessary; the complaint already claimed damages for "loss of profits". The desire to add a new defendant, Trend, Inc., was not shown to be necessary to adjudication of the controversy, and no reason was shown for non-joinder during the year the case had been pending. The desire to depose defendant Edward Porter was not accompanied by any statement or showing that efforts had been made, to no avail, to secure his attendance at a deposition by notice or order. There was no contention that appellants had been misled, to their detriment, by appellee First Federal's failure to comply with Local Rule 6, or Rule 1.440, Florida Rules of Civil Procedure.
[6] The general rule applicable is that the granting or denying of a motion for continuance is within the discretion of the trial judge and a gross or flagrant abuse of this discretion must be demonstrated by the complaining party before the reviewing court will substitute its judgment for that of the trial judge. Edwards v. Pratt, 335 So.2d 597 (Fla. 3rd DCA 1976).
[7] Rule 1.460, Florida Rules of Civil Procedure, is explicit in its requirement that the motion for continuance "shall state fully and clearly all of the facts which the movant conceives may entitle him to a continuance".
[8] Of course, we recognize that the circumstances in a case might impel the trial judge to withhold equitable relief until disposition of all issues.
[9] See Trawick's Florida Practice and Procedure (1978 Edition), § 222 "Setting actions for trial": "... Nonjury actions are usually set when the attorney obtains time for it on the judge's calendar and prepares and serves an order for trial. The judge must sign the order."

"The requirement of notice is mandatory... . The procedure for setting actions for trial is simple, but many attorneys are careless about it. They serve a notice of trial prematurely. This requires a motion to strike the notice or an informal request to the court to remove the action from the calendar. There is no excuse for failing to follow the rule. Some judges are equally careless about requiring an order setting the action for trial. Apparently they believe the rule is directory, rather than mandatory. Such is not the case. The Rules Committee on two occasions asked the Supreme Court to make the rule directory in nonjury actions so that a notice of trial could be served by the attorneys. The court refused to do so, saying from the bench that trial courts should take charge of their calendars and administer them rather than permitting the attorneys to do so."