471 So.2d 100 (1985)
SUNDALE ASSOCIATES, LTD., the Sunrise Club, Inc., and Philip J. Scutieri, Jr., Appellants,
v.
SOUTHEAST BANK, N.A., Appellee.
No. 82-1970.
District Court of Appeal of Florida, Third District.
May 28, 1985.
Rehearing Denied July 10, 1985.
*101 Horton, Perse & Ginsberg, and Edward Perse; Hall and O'Brien, Miami, for appellants.
Steel, Hector & Davis and Alvin Davis and Vance E. Salter, Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and JORGENSON, JJ.
SCHWARTZ, Chief Judge.
Before us are an appeal and cross-appeal challenging various aspects of a final judgment foreclosing a series of construction notes and mortgages securing a Dade County project in the principal amount of over $5,500,000.
Despite the complexity of the several instruments and of the relationship between the parties as it developed during the construction process, the complaint filed by the lender, Southeast Bank, did not allege with specificity the bases for the *102 foreclosure proceedings; rather it claimed only that the notes and mortgages were "in default pursuant to the terms thereof," and referred, again only generally, to the construction loan agreements. Those contracts, in turn, identify possible acts of default by the borrower, Sundale, as nonpayment of the required principal and interest and the failure to make agreed to equity contributions to the project.
The judgment under review followed a jury trial on the issues, as raised by Sundale's answer and counterclaim, of (a) whether and to what extent Southeast had waived the payment of interest by Sundale[1] and (b) whether Southeast had breached implied and express conditions of the construction loan agreement by, among other things, improperly and negligently mismanaging and failing to provide for the disbursement of funds in the course of the work. On these questions: (a) the jury found that Southeast waived interest through the date of the verdict; on post-trial motion, however, the trial court reduced the extent of the waiver to the date that suit was filed; (b) the jury found for Sundale on the "breach of contract" question and assessed "damages" of $3,000,000.[2] Subsequently, the lower court  based upon a non-jury trial which had been conducted before the jury trial  ruled that "the equities are with [Southeast]," although, like the complaint, it did not indicate the nature of the default it had found. Accordingly, it entered the judgment of foreclosure now before us for (1) the principal amounts allegedly expended by the lender, (2) interest, commencing when the suit was filed, in accordance with the prior ruling concerning the jury verdict, and (3) attorney's fees; the $3,000,000 jury award was deducted from the total sum computed for principal and interest.[3]
We hold:
1. On two grounds, the trial court erred in reducing the waiver period from that found by the jury. First, Southeast's counsel specifically agreed on the record that the extent of the waiver  including whether it extended to the time of verdict  was for the jury to determine. Any only-now-alleged error in this regard was therefore not only not preserved but was affirmatively invited and may therefore not be successfully presented in this court. Arsenault v. Thomas, 104 So.2d 120 (Fla. 3d DCA 1958); Adams v. State, 465 So.2d 564 (Fla. 3d DCA 1985); 3 Fla. Jur.2d Appellate Review § 294 (1978). Second, and in any case, the record amply supports the jury determination in this regard. Gilman v. Butzloff, 155 Fla. 888, 22 So.2d 263 (1945); Rader v. Prather, 100 Fla. 591, 130 So. 15 (1930); Davis v. Davis, 123 So.2d 377 (Fla. 1st DCA 1960). Consequently, the finding that Southeast waived interest to the date of the verdict is reinstated and will apply to all future proceedings in this cause.
2. (a) For a similar set of reasons, we reject Southeast's claim to a directed verdict in its favor on the improper disbursements-breach of contract counterclaim. The issue is, again, not even properly before us, because Southeast, ignoring the trial judge's broad hint that it do so, did not move for a directed verdict at the conclusion of all of the evidence, as is required to preserve the point. 6551 Collins Avenue Corp. v. Millen, 104 So.2d 337 (Fla. 1958); Hall v. Ricardo, 331 So.2d 375 (Fla. 3d DCA 1976). Moreover, the supposed "exception" to this rule which may arise when there is a "total lack of evidence" to support the verdict, Fee, Parker & Lloyd, P.A. v. Sullivan, 379 So.2d 412 (Fla. 4th DCA 1980), cert. denied, 388 So.2d 1119 (Fla. 1980); Pickard v. Maritime Holdings Corp., 161 So.2d 239 (Fla. 3d DCA 1964), *103 patently does not apply here. Viewed in the required light most favorable to Sundale, the record contains ample evidence of Southeast's liability in the respects claimed. See Adams v. Citizens Bank of Brevard, 248 So.2d 682 (Fla. 4th DCA 1971); Napolitano v. H.L. Robertson and Associates, Inc., 311 So.2d 757 (Fla. 3d DCA 1975).
(b) We are however persuaded that a new trial on this aspect of the counterclaim is required because of the erroneous admission of a letter written by Martinez, who was the president of the general contractor on the job, Marbilt, Inc., and who did not appear at the trial. The letter, which stated in devastatingly one-sided terms that Southeast's negligence and confusion were to blame for the numerous problems on the job and for delaying and obstructing the project as a whole,[4] constituted a classic example of inadmissible hearsay. In response, Sundale does not seriously attempt to justify the letter's admission,[5] but claims that it amounted only to harmless error. We cannot agree. The remaining, sharply conflicting testimony on the vital issues in the jury trial came from those directly involved in the dispute, Sundale's principal, Scutieri, on the one hand, and various representatives of Southeast, on the other. In this context, evidence of the views of the general contractor, who both was supposedly neutral and had unique and complete knowledge of the subject matter of the case, was of decisive and therefore plainly reversible significance. See Stambor v. One Hundred Seventy-Second Collins Corp., 465 So.2d 1296 (Fla. 3d DCA 1985); George Hunt, Inc. v. Dorsey Young Construction, Inc., 385 So.2d 732 (Fla. 4th DCA 1980).[6]
3. Our requirement of a new trial on the counterclaim moots, at least for the present, Sundale's primary contention before us, which is that the effect of the jury verdict that Southeast was at fault and had breached the loan agreements was to preclude the apparently contrary equitable non-jury determination that the mortgagor, Sundale, had breached them, by failing to make either principal payments or equity contributions to the project  which, in the light of the conclusion that interest had been waived and was therefore not due at the time of filing, see Meredith v. Long, 96 Fla. 719, 119 So. 114 (1928), were the only remaining possible bases for a default justifying foreclosure. Sundale is correct, however, in its claim that, because of the constitutional superiority accorded the right to a jury trial, the equity court is bound, in ruling on the foreclosure complaint, by the determinations of a jury on substantially identical issues. Adams v. Citizens Bank of Brevard, 248 So.2d at 684; Spring v. Ronel Refining, Inc., 421 So.2d 46, *104 47 (Fla. 3d DCA 1982); Padgett v. First Federal Savings & Loan Association, 378 So.2d 58, 64 (Fla. 1st DCA 1979); see Magram v. Raffel, 443 So.2d 396, 397 (Fla. 3d DCA 1984); N.J. Willis Corp. v. Raskin, 430 So.2d 996, 997 (Fla. 4th DCA 1983); Construction Systems and Engineering, Inc. v. Jennings Construction Corp., 413 So.2d 1236, 1237 (Fla. 3d DCA 1982), pet. for review denied, 426 So.2d 26 (Fla. 1983); Cheek v. McGowan Electric Supply Co., 404 So.2d 834, 836 (Fla. 1st DCA 1981); Napolitano v. H.L. Robertson and Associates, Inc., 311 So.2d at 758. Applying this rule, we vacate the final judgment of foreclosure under review to await the result of the new jury trial we have required. If the jury again finds for Sundale, the trial court must after further hearing determine whether that result (which it must follow) leaves any unrelated ground for the entry of a judgment of foreclosure in the lender's favor[7] and, if so, whether one has been established to its satisfaction. See also David v. Sun Federal Savings & Loan Association, 461 So.2d 93 (Fla. 1984). If the jury finds for Southeast, the trial court is authorized, either, in its discretion, with or without further testimony, generally to reinstate the judgment nunc pro tunc the date of its earlier rendition and/or to enter an amended or supplementary judgment of foreclosure reflecting such subsequent events as the necessity for additional attorney's fees.[8] In any case, it is obvious that the subsequent proceedings and any future review would be greatly facilitated if (a) Southeast's complaint is amended to specify the default or defaults upon which it relies, see Pasekoff v. Kaufman, 392 So.2d 971 (Fla. 3d DCA 1981); (b) particularized special interrogatories are submitted to the jury at the new trial which will be informative as to its precise determinations; and (c) any final judgment contains pertinent findings and conclusions with respect to the issues discussed in this opinion. See American Motor Inns of Florida, Inc. v. Bell Electric Co., 260 So.2d 276, 277 (Fla. 4th DCA 1972); Richards v. Dodge, 150 So.2d 477, 480 (Fla. 2d DCA 1963).
Vacated, remanded with directions.
NOTES
[1] Southeast does not complain that this apparently "equitable" issue was submitted to a jury. But see, Cerrito v. Kovitch, 457 So.2d 1021 (Fla. 1984).
[2] These "damages" were misnamed as such since the amount involved was essentially simply an increase of the principal sums "lent" by Southeast to Sundale for the project itself.
[3] Sundale claims that this award should instead have been deducted from the amount of principal, with interest computed upon the thus-reduced total. While this position seems not unreasonable, see supra note 2, we need not directly decide the question in the light of our requirement of a new trial on the counterclaim.
[4] The letter states, in part,

perhaps through no intent of [its] own, [Southeast's] constant administrative turnovers, changes in personnel and assignments of administrative duties destroyed this project... . As you know, very substantial delays in completing this project were created by the bank's administrative quagmire... . [I]t is clear that the bank needs to improve its situation if the project is to be completed properly.
In addition, the letter refers to
... the bank's apparent leaking of information to various people in the community that indicated to subcontractors that [Sundale], as owner, [was] in financial difficulty... . I hope that the bank will now clear up this matter and proceed to prevent, in the future, the great duress caused both of us by their many statements.
[5] The letter was admitted below supposedly "for continuity" with a series of letters from Sundale to the general contractor, apparently in an attempt to qualify under the "related writings" exception to the hearsay rule. Sec. 90.108, Fla. Stat. (1983). In fact, the previous letters have nothing to do with the one in question. The other correspondence, offered into evidence by Southeast, was written by the developer in connection with the then-contemporaneous conflicts which existed between them. The Martinez letter, however, was written long afterwards, when those conflicts had obviously been resolved and was patently no more than an attempt, for whatever reason, to assist Sundale in the present controversy with Southeast. In any event, there is no "continuity" exception to the hearsay rule provided by the Florida Evidence Code. See §§ 90.803, .804 Fla. Stat. (1983).
[6] In this regard, we note that Sundale's trial counsel stated in final argument that the letter was "the most important piece of evidence" in the case.
[7] Without attempting to rule definitively at this stage on this only hypothetical issue, which is necessarily dependent upon what occurs in the trial court after remand, we opine that on the present state of the record, a jury verdict for Sundale would seem to run contrary to any finding that it was responsible for the delays in the project and thus that it was required to make principal or equity contribution payments. For this reason, the case seems to be unlike, for example, Adams v. Citizens Bank of Brevard, see also, Spring; Padgett, in which there were equitable issues un related to those decided by the jury which remained to be determined by the court.
[8] We do not mean these indications of the future course of proceedings to be exclusive or to restrict in any way the appropriate exercise of the trial court's complete jurisdiction over the case which it will acquire when the mandate is issued  including ruling upon Southeast's projected motion for the appointment of a receiver, which it has sought our leave to file  so long as there is no inconsistency with this opinion.