614 So.2d 590 (1993)
Marvin WENDROFF, Appellant,
v.
Carol WENDROFF, Appellee.
No. 91-2884.
District Court of Appeal of Florida, First District.
February 17, 1993.
*591 David G. White, Cedar Key, for appellant.
S. Scott Walker of Watson, Folds, Steadham, Christmann, Brashear, Tovkach & Walker, Gainesville, for appellee.
ZEHMER, Judge.
Marvin Wendroff, the former husband, appeals a final judgment dissolving his marriage to Carol Wendroff. The appeal contests the trial court's distribution of marital assests and the amounts of alimony and child support awarded on grounds that the record does not contain competent, substantial evidence to support several findings of fact underlying these rulings.
On October 25, 1989, Mrs. Wendroff filed a petition for separate maintenance, alleging that she and the parties' children were living separately from Mr. Wendroff. On May 3, 1990, appellant filed an answer to *592 Mrs. Wendroff's petition and a counterpetition for dissolution of marriage, seeking a final judgment dissolving the parties' marriage and determining the primary physical residence of their children. Mrs. Wendroff subsequently filed her first amended petition for dissolution of marriage in which she sought similar relief, including equitable distribution of the parties' assets and liabilities, and an award of temporary and permanent child support and alimony, attorney's fees and exclusive possession of the parties' Gainesville residence. The matter was tried in two separate hearings in April and May 1991.
The appealed judgment ordered, among other things, that Mrs. Wendroff maintain the children's primary physical residence, that both parties share parental responsibility for raising their children, and that appellant pay to Mrs. Wendroff $800 per month for child support and $750 per month for permanent periodic alimony. In distributing the marital assets, the court ordered that 500 bubble gum machines be distributed to Mrs. Wendroff and that she have the right to determine the location of these machines. Jurisdiction was reserved to award attorney's fees and costs for Mrs. Wendroff's attorney, and the court later entered an order awarding fees and costs.
Appellant raises a number of issues on his appeal from the final judgment. It is apparent from our review of the record that the parties' conduct of the trial and presentation of evidence was more confusing than helpful to the trial court, and we sympathize with that court's efforts to correctly resolve the disputed issues on the record so made. However, we conclude it is necessary to reverse the disposition of marital assets and the awards of alimony and child support and remand for further proceedings.

I.
First, appellant contends that certain findings of fact in respect to the 500 bubble gum machines awarded to Mrs. Wendroff as marital assets are not supported by any evidence of record. In respect to this award, the trial court made specific findings to the effect that 400 bubble gum machines owned by appellant during the marriage had been sold by him to Diane Grogan, his current girl friend; that Ms. Grogan admits that she has invested no money in that vending machine business and that appellant sold these 400 machines to her for no money; that another 100 machines purchased during the marriage are still "titled" in appellant's name; and that at the time of the final hearing appellant had bubble gum machines placed in various locations in Leon, Jefferson, Columbia, Union, Madison, Bradford, Duval, Hillsborough, Pasco, Hernando and other counties. Based on these findings, the trial court attributed a value of $32,000 to the 400 machines that appellant purportedly sold to Ms. Grogan, and attributed $8,000 in value to the 100 machines found to be still "titled" in appellant's name. The trial court ordered that 500 machines be distributed to Mrs. Wendroff, and provided further that any other machines owned by appellant shall continue to be owned exclusively by him.
The parties' evidence on this issue was confusing at best, in part because appellant apparently had not adequately complied with certain discovery requests. The transcribed testimony and the parties' arguments in their appellate briefs indicate that the locations and numbers of machines owned by Mr. Wendroff, and their total value, varied significantly between the only relevant time, i.e., appellant's filing of the initial petition for dissolution of marriage, and during the one-year period between the filing of the petition and the final hearing. The final judgment does not determine the number and locations of machines appellant owned at the time of filing of the petition, nor does it specify the number owned by appellant at any particular point in time. The parties' evidence at trial attempting to show an inventory of these machines was not limited to any particular point in time, and the wife's primary evidence of such inventory included machines apparently acquired just prior to the final hearing, well after the petition for dissolution *593 was filed.[1] We have been unable to derive an accurate and meaningful inventory of the machines from the record before us.
Section 61.075(6), Florida Statutes (1989), provides:
The date for determining marital assets and liabilities and the value of such assets and the amount of such liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage, unless the trial judge determines another date is just and equitable under the circumstances.
In Bauzon v. Bauzon, 588 So.2d 660, 661 (Fla. 1st DCA 1991), this court recently held with respect to this statutory requirement:
Under this statute, the valuation date is presumed to be the earliest of the date the parties enter into a valid separation agreement, another date expressly established by a valid separation agreement, or the date on which the petition for dissolution of marriage is filed. The statute also gives the trial court discretion to use another date for valuing the assets and liabilities, if the court determines that use of such other date is just and equitable under the circumstances and both the reason and the other date are stated in the final judgment. In order that an appellate court may provide adequate review to assure compliance with the requirements of section 61.075(4), we hold that unless the circuit court distributing marital assets in a final judgment of dissolution specifically identifies a valuation date of these assets that is different from the date of filing of the petition and also recites the specific circumstances and considerations that make the use of this date just and equitable, we shall presume that for such valuation, the circuit court was required to use the date of filing of the petition or the date the parties entered into a valid separation agreement, whichever is earlier, unless the record contains a specific written agreement executed and filed by the parties establishing a specific date of valuation.
It should also be noted that "[w]hen property valuation is an integral part of the court's entire plan of distribution, confusion as to value requires reversal of the property award." Ross v. Bandi, 566 So.2d 55, 56 (Fla. 4th DCA 1990). See also Saxton v. Saxton, 454 So.2d 575 (Fla. 4th DCA 1984).
The record in this case does not indicate that the parties had entered into a valid separation agreement, and the final judgment does not contain any statement that the trial court used a valuation date other than the date on which the petition was filed supported by the required statement of reasons for using such other date; so, we must assume on this appeal that the valuation date required to be used by the statute is the filing date of the husband's petition for dissolution. The final judgment does not make any finding as to the number and locations of machines on the date that petition was filed or at any particular point in time. After reviewing the record, we are unable to determine what date the trial court had in mind for determining the inventory and value of marital assets when it entered the final judgment. Nor are we able to determine how many bubble gum machines were owned by appellant on any particular date to determine how many could be validly distributed to Mrs. Wendroff as marital assets. Since the number and valuation of these machines affects the entire distribution scheme significantly, considering that the 500 machines awarded to Mrs. Wendroff are said to have potential gross earning capacity of $50,000 annually,[2] we must reverse *594 the entire distribution scheme and remand for further proceedings on this issue. The trial court may require the parties to present additional evidence in view of the confusing record made in the previous hearings.[3]

II.
Second, appellant contends it was error for the trial court to find that he sold 400 machines bought during the parties' marriage to Ms. Grogan for no money. We have been unable to find any competent, substantial evidence in the record to support this finding. At the hearing, Ms. Grogan testified that in early 1991 (after the filing of the dissolution petition), she purchased approximately 400 machines with the proceeds of a loan. She testified that the machines were not bought in her name but were purchased instead in appellant's name because "he was with this company for, I don't know, 15, 20 years or how long when he was in the vending machine business, and they give him a big discount. So what I did is, you know, I got him to get it for me because of the discount." When asked about the source of the loan used to purchase the bubble gum machines, Ms. Grogan denied that appellant was the source, and testified that "I borrowed the money for (sic)  I can't give any names because he's married. So the money was under the table." At the hearing, appellant denied that he owned any machines jointly with Ms. Grogan, but testified that he had arranged to purchase in his name 400 machines for Ms. Grogan with money she gave him because he was able to get a discount on them. Appellant also testified that he expects to derive some income from those machines when they begin to generate income in exchange for his assistance in setting up and placing the machines in various locations. Neither appellant nor Ms. Grogan testified that appellant sold 400 machines to Ms. Grogan. Even if we entirely discredit appellant's testimony (recognizing that there were inconsistencies in his testimony), still there is no evidence of record to support the finding that appellant "sold" Ms. Grogan 400 machines acquired during appellant's marriage to Mrs. Wendroff. There is, therefore, a lack of competent, substantial evidence to support the $32,000 value attributed to appellant for the "sale" of those 400 machines to Ms. Grogan. And since the potential income from the 500 machines awarded to Mrs. Wendroff to counteract this "sale" would undoubtedly affect the distribution scheme, this disposition must be reversed and remanded for further proceedings.

III.
Third, appellant contends that the trial court erroneously imputed income to him in the amount of $129,000 for 1988, which served as the basis for awarding Mrs. Wendroff permanent periodic alimony of $750 monthly and child support of $800 monthly. The imputation of income was based on the following findings:
The Court further finds that MARVIN WENDROFF has intentionally misstated his income to decrease the apparent value of funds earned... . Each machine generates a gross profit of $102.00 per year on an average, and MARVIN WENDROFF reported income in 1988 of $129,000.00... . Based upon misrepresentations by MARVIN WENDROFF, and the known facts: His income in 1988, the number of machines observed by the Wife and Gerd Weidler, the number of machines he admitted owning, and the value of the machines, the Court imputes income to MARVIN WENDROFF.
(Emphasis added). The final judgment contains no explanation of how the $129,000 "reported income" figure was determined, and does not indicate whether this figure *595 represents gross income or net disposable income after expenses.
Mrs. Wendroff's brief points to the following evidence to justify this figure: appellant's financial affidavit, the tax returns in evidence, and the deposits to the parties' bank accounts. After reviewing the transcript and exhibits, we conclude, as contended by Mr. Wendroff, that the $129,000 figure is simply the total deposits made to his Gainesville bank account during a 17-month period from December 1987 through May 1989. The record is insufficient to support a determination that these deposits represent appellant's "reported income," either gross or net. The copies of the parties' 1988 joint income tax return introduced at trial reveals adjusted gross income in amounts far less than $129,000 for that tax year.[4] Appellant testified that the 1988 return accurately reflected his income and business expenses for that year. Neither the other tax returns in evidence nor appellant's financial affidavit reveal an annual income anywhere near $129,000. On the other hand, Mrs. Wendroff's Comp. Ex. 6, consisting of copies of bank statements covering the parties' Gainesville bank account for the period December 1987 through May 1989, reflects highlighted deposits made to that account during this period. Attached to the exhibit is an adding machine tape showing the total amount of these highlighted deposits to be $129,431.24 for the 17-month period, indicating an average monthly cash deposit of $7,613.60. However, neither this exhibit nor any other evidence in the record indicates the source of the deposits, and in view of the obvious fact that even if these are assumed to be deposits generated by appellant's business sales activities, appellant's net disposable income for personal use could only be arrived at by subtracting sales and overhead expenses from gross cash deposits. In short, this record is insufficient to establish that appellant earned $129,000 income in 1988 as found by the trial court.
It is error for a trial court to impute income to a supporting spouse without setting forth the amounts imputed and the sources of this income. Levine v. Best, 595 So.2d 278 (Fla. 3d DCA 1992). In Seilkop v. Seilkop, 575 So.2d 269 (Fla. 3d DCA 1991), the court held:
First, we find that the trial court erred in determining the amount of child support. The trial court erred in imputing income to the husband without setting forth what amounts it imputed and, furthermore, from what sources. See Hogle v. Hogle, 535 So.2d 704 (Fla. 5th DCA 1988). As stated in Hogle v. Hogle, 535 So.2d at 705, "[i]n order to impute income, the trial judge must find that the parent owing a duty of support has the actual ability to earn more than he or she is currently earning, and that he or she is deliberately refusing to work at that higher capacity to avoid support obligations." On remand, the trial court must indicate the basis for each of the sources of income that it imputes and/or attributes to the husband.
575 So.2d at 270. Therefore, because the amounts of the alimony and child support awards were based on assumed income at this level without meeting these requirements, the awards must be reversed and remanded for reconsideration.

IV.
Fourth, appellant argues it was error for the final judgment to, in effect, disregard appellant's sale, before his petition for dissolution of marriage was filed, of the Florida Singles newspaper to Ms. Grogan for $200 and then treat the paper as a marital asset worth $5,000 because it brings in $6,000 to $7,000 per month average income. Appellant admits that he sold the paper to Ms. Grogan for $200 three months before filing his petition to avoid Mrs. Wendroff having any interest in the paper, but he contends that the trial court erroneously treated this as a marital asset because it was divested before the petition was filed, and further argues that the assigned *596 value is not supported by the evidence because the paper never earned $6,000 to $7,000 a month.
We agree with appellant that it was error on this record to attribute a value of $5,000 to the newspaper and distribute it as a marital asset to appellant. There is no evidence in the record to support a finding that at any time, whether at the time of the sale or at the filing of the petition, the paper had generated a $6,000 to $7,000 monthly income (either gross or net after expenses); nor is there any other evidence to support the attribution of a $5,000 value to the paper. When Ms. Grogan was asked on direct examination to "estimate gross income from [it] per month over the first year of operation," she stated "six or seven thousand dollars," without indicating whether she was referring to yearly or monthly income (or to gross or net income). On cross-examination, when Ms. Grogan was again asked about the $6,000 to $7,000 figure, she testified that she thought that Mr. Wendroff's attorney was referring to the annual gross amount on direct examination. She then testified that in 1990 the average gross monthly figure was about $1,000 to $1,100, and that in 1991 the average gross monthly figure rose to $2,500 with the addition of a 1-900 number. When asked about the paper's net income, Ms. Grogan testified that "I went minus." When appellant was asked how much the paper was "grossing" at the time of the hearing, he responded that the amount was about $3,500. When asked about how much of that figure represents monthly net income, appellant responded, "[a]bout nine hundred, a thousand dollars." Appellant was not asked about the net income of the paper at the time of sale to Ms. Grogan or at the time of filing the petition.
The trial court did not set aside the sale of the paper, so its ownership is still in Ms. Grogan. Thus, there is no basis in the record for the court to treat this as a marital asset unless the court should further find that the asset was conveyed to Ms. Grogan for a grossly inadequate consideration solely to prevent Mrs. Wendroff from participating in its value as a marital asset. Even if we treat the paper as a marital asset, the record lacks competent, substantial evidence to establish the paper's net income, and thus capitalized value, at the time of the filing of appellant's petition; thus, the trial court erred in attributing a $5,000 value to it on this record. Accordingly, we reverse that portion of the final judgment attributing a $5,000 value to the paper and distributing the paper to Mr. Wendroff as a marital asset, and remand this cause for further proceedings in accordance with this opinion.
We point out again that the trial court may take additional evidence on this and any other issues relating to alimony, child support, and equitable distribution deemed desirable or necessary for a fair resolution of disputed issues.

V.
Finally, appellant contends that the trial court erred as a matter of law and fact when it awarded attorney's fees and costs to Mrs. Wendroff. He argues that Mrs. Wendroff is not entitled to such an award because, although the final judgment attempted to divide the marital assets equally, it left Mrs. Wendroff in a better financial position than it did appellant; every income-producing asset he owned was distributed to Mrs. Wendroff; she was awarded permanent periodic alimony; and she was given all funds in the Dean Witter account as lump sum alimony. In light of our reversal of the equitable distribution of the parties' property and the awards of periodic alimony and child support, we also remand for reconsideration of the former wife's entitlement to attorney's fees and costs in light of the trial court's ultimate ruling on remand.
REVERSED AND REMANDED.
ERVIN, J., concurs.
BOOTH, J., dissents with written opinion.
BOOTH, Judge, dissenting.
The trial court aptly states in the final judgment that the court "had to sift through pounds of documents, ounces of *597 testimony,[[1]] and grams of truth." Indeed, the record here conclusively demonstrates that appellant himself either caused or substantially contributed to each and every error of which he complains. An appellant cannot seek reversal based on alleged errors he has caused. See, e.g., Sundale Associates, Ltd. v. Southeast Bank, N.A., 471 So.2d 100 (Fla. 3d DCA 1985); Williams v. Great American Bank, 435 So.2d 402 (Fla. 3d DCA 1983); Guy v. Kight, 431 So.2d 653 (Fla. 5th DCA 1983), and other cases cited in 3 Fla.Jur.2d Appellate Review § 294 (1978).
Appellant's contributions to the errors of which he now complains are nowhere more readily apparent than as regards a principal source of his income: hundreds of bubble gum machines. The trial court found that appellant sold 400 bubble gum machines to his girlfriend, Dian Grogan, for no money. Appellant failed to comply with the simple discovery request that he provide an inventory stating the times at which he bought and sold the machines. At trial, appellant first testified that he owned approximately (he could not be sure of the number) 65 bubble gum machines. When reminded that he had purchased approximately $21,000 worth of bubble gum machines during the preceding year, appellant admitted purchasing 300 machines, but stated that Ms. Grogan had provided the money. When asked whether the machines were in Ms. Grogan's name, appellant stated they were not. When appellant was shown records from the manufacturer of the machines indicating that he had purchased 635 machines during the preceding year, appellant produced bills of sale to third parties for 220 of the machines (leaving 415, not counting the 65, that appellant admitted to owning). In response to a question from the trial court as to whether 65 was not the right answer, appellant again asserted that the remaining machines were not his and that they belonged to Ms. Grogan. Then, in the same paragraph of testimony, appellant first testified that Ms. Grogan had the money to purchase the machines, then said that he had loaned the money to Ms. Grogan to purchase the machines, apparently overlooking his testimony moments earlier that he had sold the 220 machines to pay the mortgage on his house. Finally, appellant testified that the manufacturer allowed him a credit to purchase the machines.
Ms. Grogan's testimony on the subject was almost equally confusing and improbable. Ms. Grogan testified that appellant had purchased approximately 400 machines for her; that the machines were purchased in appellant's name because he was able to receive a discount; and that she paid appellant, at different times, some $15,000 to $17,000, which sum she borrowed from a married man she would not name.
Appellant should not be permitted to affirmatively mislead the trial court and then complain that the trial court has erred in a manner in which he did not intend. He should not profit from his perfidy. Further, it does not appear the trial court erred in finding that appellant had sold 400 machines to Ms. Grogan for no money. The court received evidence that appellant had purchased and retained the 400 machines in his name. While appellant and Ms. Grogan testified that the machines belonged to Ms. Grogan, appellant produced no bill of sale for the machines, and the trial court certainly had the right to reject the "evidence" that appellant had received any legally cognizable consideration for the machines. Indeed, the trial court should be commended for sifting out what little sense could be made from a great deal of nonsense.
Any error in the trial court's determination that appellant earned $129,000 in 1988 was contributed to or caused by appellant. Appellant's financial affidavits, filed in May 1990 and January 1991, reflect monthly net incomes of $1,369 and $1,071, respectively, and monthly expenses of $6,344 and $4,304, respectively. Appellant admitted that he kept no written records of his earnings from the bubble gum machines. The trial court, recognizing the sheer futility of attempting to accurately determine appellant's net income, expressly based the awards of child support and alimony on *598 demonstrated needs of the wife and two minor children of the parties. To that end, the court distributed to the wife income-producing assets, to-wit: 400 bubble gum machines.[2] Appellant has failed to demonstrate reversible error.
Appellant should not be heard to complain of the trial court's assessment of a $5,000 value to the Florida Singles newspaper, a value well within the range of the pertinent testimony. Likewise, the trial court committed no error in allowing appellee a $5,000 credit for the value of the newspaper, without formally setting aside the transfer of the newspaper to Ms. Grogan. Appellant, in a fleeting moment of candor, testified that he sold the newspaper to Ms. Grogan for $200 to prevent appellee from obtaining any interest in the newspaper.
Finally, the majority attaches great significance to the trial court's failure to set forth, pursuant to section 61.075(4), Florida Statutes, a date other than the filing of the petition for dissolution for the purpose of valuing certain marital assets, and accordingly considers that the trial court's valuation of the assets must be assumed to be the date of filing of the petition. What is clear from the face of the record is that the trial court endured with remarkable patience three days of testimony during which appellant and the other witnesses demonstrated a complete inability to provide straightforward, candid answers to even the most simple questions. The court did not have the luxury of selecting the date of filing the petition or any other specific date on which the assets should be valued. Moreover, appellant has not complained below or here that the trial court failed to comply with section 61.075(4), Florida Statutes. The majority here affords appellant relief on an issue he did not raise.
I would affirm the judgment below.
NOTES
[1] Mrs. Wendroff placed in evidence a schedule entitled "INVENTORY OF VENDING MACHINES," which showed a total of 1,157 machines, reflecting the total of machines bought at various times before the filing of the petition as well as during the period after the filing of the petition to just prior to the final hearing.
[2] This estimate is based on testimony that each machine would have an average annual income of $102 per machine.
[3] In particular, the court should compel appellant to provide meaningful discovery regarding the bubble gum machine business, including a list of all machines acquired during the marriage, their disposition up to the date of his filing of the petition for dissolution or such other date as the trial court may find equitable, the cost of such machines when acquired and the disposition made of the machines, including any monies received therefor. The court may also require the parties to present evidence on these issues in chart form to assist it and this court in understanding these disputed issues.
[4] The return indicates gross business receipts or sales before deducting cost of sales at $69,561; gross income from sales of $29,095; deductions of $19,332; and net income of $9,763. Other reported income for that year totals $998.
[1] The court was clearly referring to the probative value and not the volume of the testimony.
[2] The court specifically found that appellant was not disposed to support his family in the face of a court order and had been in contempt for failing to comply with a temporary support order.